STATE EX REL. ORAL C. ANDERSON v. RALPH H. TAHASH.

142 N. W. (2d) 94.

April 7, 1966—No. 39,891.

*William P. Westphal,* for appellant.

*Robert W. Mattson,* Attorney General, and *Gerard W. Snell,* Solicitor General, for respondent, warden of State Prison.

ROGOSHESKE, JUSTICE.

Petitioner pled guilty to an indictment charging him with the crime of carnal knowledge and abuse of a 6-year-old female child.

He was arrested at 3 a. m. on March 14, 1962. He was taken into custody and questioned by two police officers, during which a request to call his mother was temporarily refused. At 4:25 a. m. he began dictating a confession to the offense, which was thereafter transcribed and signed at 6:15 a. m. In his confession, he readily admitted committing the offense upon the child in his room at about 8:45 p. m. March 13, after he had enticed her there to receive payment for four boxes of candy which she was selling for a charity. Afterward he took the child to a tavern for a "bottle of pop" and thence to her home located nearby. After disclosing his name to the child's mother, he returned to his roominghouse, ate part of the candy, went to bed, and was thereafter arrested.

Following petitioner's indictment on March 20 and arraignment on March 21, at which a plea of not guilty was entered, Lewis Lohmann, public defender of Hennepin County for many years, was appointed to represent him. After conferring twice with his counsel (once for about 5 minutes and again for 10 minutes), petitioner, on April 13, 1962, entered a plea of guilty, whereupon his confession was made a part of the record and an indeterminate life sentence was imposed.

About 2½ years thereafter he applied to the district court for a writ of habeas corpus, alleging that his appointed counsel was inadequate and ineffective. Pursuant to the writ issued by the court, the state filed its return and petitioner was accorded an evidentiary hearing at which he was represented by counsel appointed by this court. Petitioner appeared and testified, and the court made comprehensive findings of fact.

Included were specific findings that petitioner's plea was freely and voluntarily made and that he "was duly and properly represented and advised by competent counsel at all stages of the proceedings." The court discharged the writ and petitioner appeals from that order.

Petitioner's claims of denial of his constitutionally protected right to the assistance of counsel are predicated on two grounds: (1) That his appointed counsel conferred with him only briefly, advising him to plead guilty after reading a copy of the confession without informing him of his rights or making any attempt to secure a lighter sentence; and (2) that, contrary to the rule of Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977,[1] he was not advised of his right to remain silent and was denied his right to counsel prior to eliciting from him the incriminating confession.

The court's finding that counsel's representation was adequate is amply supported by the record. As the court explained:

"* * * I have reviewed his testimony given at the habeas corpus hearing and when analyzed in the light of the record made at the time of his plea of guilty before the District Court, I feel compelled to disregard those of his present claims that are clearly inconsistent with the formal record made in open court * * *."

As indicated, the record at the time of the plea directly contradicts petitioner's testimony that he was not advised of his rights. Although the state does not challenge petitioner's testimony concerning his claim that his counsel advised him to plead guilty and the duration of the two conferences, the record does not warrant a finding that the advice was unsound nor that the conferences were insufficient to advise him of all his rights under the circumstances.[2] It is significant that petitioner makes no claim either that his plea or his confession was not freely and voluntarily made or that either was obtained through coercion, trickery, threats, or promises. Further, there is no suggestion that his confession is not true or that his subsequent plea of guilty should not be accepted as corroborating his confession and as an admission of the offense. In such cir-

---

[1] Decided June 22, 1964.
[2] State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785.

cumstances, the advice to plead guilty would not indicate incompetence of counsel but, rather, may well be regarded as sound advice.[3]

With respect to the failure to appoint counsel prior to the accusatory interrogation by the police officers, we have recently held that the rule of Escobedo is not to be applied retroactively. State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3. Despite that holding, the restricted application of that rule would afford petitioner no basis for relief.

In the Rasmussen case we also held (272 Minn. 548, 141 N. W. [2d] 10):

"* * * [T]he failure of law enforcement authorities to advise a defendant of his rights to counsel does not in and of itself compel exclusion of a confession obtained from one upon whom the investigative procedures have come to focus."[4]

Moreover, while we believe an accused should routinely be advised of his rights to remain silent and to counsel before incriminating questions are asked, the court did not find any affirmative conduct on the part of the police officers by which petitioner's right to counsel was frustrated. On the contrary, the court explained:

"* * * While it appears that petitioner now claims that before the statement was made he was denied the right to call his mother for the purpose of contacting a lawyer, a careful analysis of his testimony at the habeas corpus hearing reveals that his first testimony on this point was that he 'wanted to call my folks and my family to let them know where I was at'. On cross-examination, after it appeared that he was not living with his wife, then he claimed he wanted to call his mother. He made no claim at that juncture that he wanted to call his mother for the purpose of contacting a lawyer. It was only * * * in re-direct examination and in response to a leading question, that he finally did say that he wanted

---

[3] State v. Demry, 260 Minn. 173, 109 N. W. (2d) 587; United States v. Gutterman (2 Cir.) 147 F. (2d) 540, 157 A. L. R. 1221.

[4] In petitioner's written confession, he acknowledged that he confessed, "[k]nowing that this statement can be used for or against [him] in court * * *."

to call his mother for the purpose of getting a lawyer. This court is not forced to accept petitioner's final version of why he wanted to call his mother."

Absent any showing of coercion, a refusal to permit petitioner to call his mother at 3 a. m. could not alone be a sufficient basis to require suppression of the confession.

Finally, and most important, petitioner's voluntary plea of guilty was the sole basis upon which he was adjudged guilty. It is not claimed that his confession induced his plea, and it certainly was not used to establish his guilt but was placed before the court after the plea of guilty solely to inform the sentencing judge of the morbid details of the crime. It is clear that the rule of Escobedo does not require suppression of a confession employed only as a presentence investigative aid.

An examination of the record as a whole does not establish any prejudice or denial of petitioner's fundamental rights. As the court indicated when discharging the writ, it became obvious at the hearing that petitioner's major dissatisfaction with counsel was his feeling that no attempt was made to persuade the sentencing judge to limit the sentence. We share the court's view that —

"* * * [c]onsidering the abhorrent nature of the crime, no court would be likely to do otherwise than was done. The Board of Parole,[5] in this situation, is the logical body to determine eligibility for parole or the duration of his confinement."

Affirmed.

---

[5] Now the Adult Corrections Commission.