STATE v. EUGENE J. DINNEEN.

184 N. W. (2d) 16.

February 5, 1971—No. 41774.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, and *James M. Kelley,* Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Rosengren, JJ.

NELSON, JUSTICE.

On June 27, 1968, defendant-appellant, Eugene J. Dinneen, was charged by information under Minn. St. 609.485[1] with es-

---

[1] Minn. St. 609.485 provides in part: "Subdivision 1. 'Escape' includes departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period.

"Subd. 2. Whoever does any of the following may be sentenced as provided in subdivision 4:

cape from a penal institution on June 18, 1968. On June 24, 1968, Mr. Jack Walsh, public defender, was appointed as defendant's counsel by the Municipal Court of Washington County. Defendant waived preliminary hearing on June 27 and pled guilty on that date in Washington County District Court to the charge of violating § 609.485.

Following entry of his plea of guilty, defendant was sentenced to a term of 2½ years pursuant to the provisions of § 609.485, subd. 4(1), to be served consecutively with a previous felony sentence imposed in 1966.

Notice of appeal from the judgment of conviction of escape was filed December 23, 1968, but pursuant to defendant's subsequent motion this court remanded the case for postconviction hearing. The hearing was held October 29, 1969, before the Washington County District Court. By an order dated November 3, 1969, that court dismissed defendant's petition for postconviction relief. On November 10, 1969, defendant sent notice of intention to proceed with the original appeal and to include issues raised in the postconviction proceeding.

Defendant is an inmate of the State Prison at Stillwater, Minnesota, where he has been confined since February 24, 1966, at which time he was committed pursuant to a sentence of 7 years for aggravated robbery imposed by the District Court of Hennepin County.

On June 18, 1968, defendant was assigned to the minimum security work farm at the prison. At approximately 9:30 p. m. on that same day, defendant left the farm by slipping out through a hole in the wall. After leaving the farm, he hitchhiked to St. Paul, where he drank some beer in a bar. From the bar in

---

"(1) Escapes while held in lawful custody on a charge or conviction of a crime; * * *

\* \* \* \* \*

"Subd. 4. Whoever violates this section may be sentenced as follows:

"(1) If the person who escapes is in lawful custody on a charge or conviction of felony, to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

St. Paul he took a cab to his wife's apartment in Minneapolis, arriving there at approximately 1 a. m. June 19, 1968. Prison authorities arrived and arrested defendant shortly thereafter, and he was returned to the prison, having spent about 3½ hours away from custody.

Defendant's version of the escape, related at his postconviction hearing, is that early in the evening of June 18, 1968, he was given two pints of whisky and a six-pack of beer by an acquaintance. He stated that he gave the beer away and drank most of the whisky himself, and that he was drunk at the time he left the farm. He maintained that he intended to return to the prison.

The legal issues raised on appeal are as follows: (1) Was defendant denied due process of law on the ground that the element of intent was not present for his escape? (2) Was defendant denied his constitutional right of allocution? (3) Was defendant denied his constitutional right to adequate aid and representation of counsel? (4) Was defendant's sentence discriminatory, did it constitute a denial of equal protection of the laws guaranteed by U. S. Const. Amend. XIV, and did it constitute cruel and unusual punishment within the the meaning of U. S. Const. Amend. VIII?

■ Defendant argues that he was denied due process of law when the district court accepted his plea of guilty of escape from a penal institution because he did not possess the element of intent at the time he escaped. Defendant bases this contention upon his alleged intoxication at the time of the offense and the inference of involuntariness which intoxication raises.

Upon defendant's entry of his plea of guilty to the charge, statements were made by defendant's counsel, and defendant was sworn and testified in response to questions put to him by the court as to his state of mind after he admitted he had been drinking at the time of his escape:

"Q. You mentioned that you got a little drunk. Just to clear the record in that respect, you knew of course when you left the farm that you were leaving?

"A. Oh, yes. Sure.

\* \* \* \* \*

"Q. \* \* \* The drinking in no way interfered with your reasoning processes as far as whether or not you had a right to leave the farm.

"A. That's right, Your Honor."

At the postconviction hearing, defendant testified in response to his counsel's questions:

"Q. \* \* \* [Y]ou feel that you were intoxicated at the time?

"A. Oh, I was drunk.

"Q. You were drunk?

"A. Drunk.

"Q. All right. And in looking at your specific allegation, number three of paragraph five of your petition, you are alleging that you were convicted of the crime of escape although the element of intent was not present.

"A. There was no intent. There was no intent to escape. I could prove it by—

"Q. Well, did you have any intention—what was your intention when you went through that window?

"A. To get some more booze.

"Q. To get some more booze?

"A. Yes, sir.

"Q. And what were you going to do after that?

"A. Come back. Come back to the prison."

Further indication of the condition of defendant's mind at the time of his escape is provided by his recalling at the postconviction hearing the events of his escape. He stated he slipped out of an open window less than 20 feet from a prison guard. He reiterated in detail where and how he "hitched" a ride to St. Paul, and he provided information about the person who gave him the ride. He also recalled going to a St. Paul bar where he had beer and taking a "radio cab" to his wife's apartment in Minneapolis and the subsequent details of his arrest.

The above references to the record refute defendant's contention that he did not intend to escape from the prison because he was so intoxicated that he did not know what he was doing. At his arraignment he admitted to the court that he knew what he was doing when he left the prison. At the postconviction hearing he admitted that his intention in leaving was "to get some more booze." And his ability to describe in considerable detail the events that took him from the prison to his wife's apartment in Minneapolis do not bespeak a person acting in a dazed or muddled condition.

This court has held that the mere fact that a defendant states that he had been drinking or was taking drugs does not create a presumption that he was intoxicated, and the possibility of intoxication does not create the presumption that a person is rendered incapable of intending to do a certain act. State v. Lund, 277 Minn. 90, 151 N. W. (2d) 769.

Defendant's reliance on Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698, for the proposition that statements made by a defendant at the time of his plea negated the existence of an essential element of the crime charged and were inconsistent with the plea is simply not borne out in the instant case. The record shows that defendant, after his plea of guilty, made no statement of facts which would negate the existence of an essential element of the crime, nor did he make statements inconsistent with his plea of guilty. There has been no demonstration of manifest injustice which would compel this court to order vacation of defendant's plea of guilty and remand the matter for trial.

■ Defendant contends that if he had been given his full statutory right to allocution he would have testified as to his intoxication. The record reveals that defendant's counsel was permitted to present a plea of leniency. At that time counsel cited the facts that defendant had been a good prisoner up to the time of his escape, that he had been placed in a position of trust, that he had fully cooperated with the authorities when he was arrested, and that he had cooperated with the court. Counsel

made a well-reasoned plea why defendant should be given the minimum felony sentence for his escape.

The record also shows that the court asked defendant a number of questions and then asked him, "Do you have anything further that you wish to say to the court before I pass sentence?" At this time defendant made the statement that he felt he should be shown a "little mercy," spoke of his good prison record, and said that he "got a little drunk" on the day of his escape. The court then made direct inquiries as to the effect of defendant's intoxication on his state of mind and then passed sentence.

It is clear in the instant case that defendant was given his full right to allocution. Both he and his attorney addressed the court in regard to mitigating facts, circumstances, and arguments which were available and appropriate for consideration in determining the sentence to be imposed. That this information did not go unnoticed is apparent from the statement of the court that it reduced the sentence to one-half the legal maximum because of defendant's good record as a prisoner and the fact that defendant was not gone very long from the prison.

■ Defendant further argues that he was denied his Sixth Amendment right to adequate aid and representation of counsel on the grounds that he did not have enough time to consult with his court-appointed counsel and that he was not advised of all the necessary elements of the offense of escape from a penal institution. Contrary to these assertions, the record shows that defendant admitted that he had had a full opportunity to discuss his case with his counsel and further admitted that he was fully apprised of the elements of the crime of escape from a penal institution.

The general rule with respect to the allegation of incompetence or inadequacy of counsel in this state is that to be sufficient the allegations must disclose a performance by counsel so incompetent as to make the proceedings "a farce or a mockery of justice." State v. Waldron, 273 Minn. 57, 69, 139 N. W. (2d) 785,

794; State v. Lund, *supra;* State v. Roberts, 279 Minn. 319, 156 N. W. (2d) 760.

The record reveals that defendant conferred with his counsel at least twice about his case. In State ex rel. Anderson v. Tahash, 273 Minn. 499, 142 N. W. (2d) 94, certiorari denied, 385 U. S. 880, 87 S. Ct. 166, 17 L. ed. (2d) 107, where the defendant consulted twice with his court-appointed counsel (once for about 5 minutes and again for 10 minutes) and was given an indeterminate life sentence after a plea of guilty, this court found that the guilty plea was freely given, that defendant was advised of his rights, and that there was no suggestion that the admission of guilt was not true. There the court held that the defendant was adequately represented by counsel. We reach the same conclusion in this case.

■ Finally, defendant contends that his sentence constitutes a denial of equal protection of the law under the Fourteenth Amendment to the Federal Constitution. This court faced this same issue in the recent case of State v. Gamelgard, 287 Minn. 74, 177 N. W. (2d) 404. In that case the defendant and one Dwyer entered into a scheme to defraud Dwyer's employer of sums which totaled $23,000. Their scheme was later discovered, and Dwyer was indicted on two counts of theft. He pled guilty and was sentenced to a 10-year indeterminate sentence and immediately placed on probation. Defendant was later indicted on the same charges and pled not guilty. He was tried in Hennepin County District Court by a jury and before a different judge than the one who had accepted Dwyer's plea of guilty, was found guilty on both indictments, and sentenced to 5 years on each charge, to run consecutively, totalling a maximum of 10 years in prison. On appeal from this conviction, defendant alleged that he was denied equal protection of the law because of the sentence disparity between his case and Dwyer's. In responding to this argument, this court stated (287 Minn. 77, 177 N. W. [2d] 407) :

"This court does not have the authority to reevaluate the sentence imposed on a defendant. State ex rel. Miletich v. Tahash,

275 Minn. 505, 148 N. W. (2d) 134. If the sentence is authorized by law, we cannot limit or amend it. State v. Bohall, 280 Minn. 1, 157 N. W. (2d) 845. * * *

"In the case before us the challenged action involves sentences imposed by two different judges in the same court. The trial judge has great discretion in the imposition of a sentence. The mere fact that two different judges chose to exercise this discretion in two widely different ways is not in and of itself a denial of equal protection. The factors * * * which determine how severe a sentence will be imposed are such that an appellate court cannot substitute its judgment for that of the trial court, especially where, as here, two different judges imposed the different sentences.

"* * * But where Dwyer was sentenced by one judge and defendant by another, defendant must point to more than the difference in sentence treatment before he can establish a denial of equal protection of the law."

It is manifestly clear that Gamelgard resolved the issue of whether imposing different lengths of sentences for the same crime constitutes a denial of equal protection of the law and that its reasoning applies to the instant case.

Defendant also contends that the 2½ year sentence for his escape is cruel and unusual punishment in light of the fact that he was only away from the prison a little over 3 hours.

This court in State v. Anderson, 280 Minn. 461, 462, 159 N. W. (2d) 892, 894, said with reference to cruel and unusual punishment:

"It is the province of the legislature to declare what acts deemed by the lawmakers inimical to the public welfare shall constitute crimes, and to prohibit the same and provide the penalties therefor. State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935. The wisdom of such acts of the legislature is not for the courts, State v. Moilen, 140 Minn. 112, 167 N. W. 345, 1 A. L. R. 331; 5A Dunnell, Dig. (3 ed.) § 2407, unless the pun-

ishment provided is out of all proportion to the crime so as to constitute a violation of the constitutional proscription against cruel and inhuman punishment. Ordinarily, cruel and inhuman punishment relates to something that involves mental or physical agony, or a sentence of such duration that it is out of all proportion to the nature of the crime. Trop v. Dulles, 356 U. S. 86, 78 S. Ct. 590, 2 L. ed. (2d) 630."

See, also, Steeves v. State, 287 Minn. 476, 178 N. W. (2d) 723.

Pursuant to the provisions of § 609.485, subd. 4(1), the district court had in its discretion the right to impose a sentence of up to 5 years to be served consecutively with defendant's prison sentence. The court imposed a sentence of only one-half the legal maximum.

At the postconviction hearing and again on appeal, defendant submitted a list of sentences imposed upon inmates who had been convicted of escape from Stillwater from 1964 through 1968. His contention is that his $2\frac{1}{2}$ year consecutive sentence is harsher than sentences received by other inmates who had been gone from the prison for a longer time than he had, and who had committed crimes during their periods of escape. Clearly, a sentence of $2\frac{1}{2}$ years out of a maximum sentence of 5 years for prison escape does not fit the above definition of cruel and unusual punishment.

It has been held by this court that an application for relief from the provisions of a sentence which is within the statutory limits of the sentence to be imposed for the offense committed should be directed to the Adult Corrections Commission and not to this court. State v. Owens, 268 Minn. 321, 129 N. W. (2d) 284. Relief from the rigorous provisions of a statutory penalty should be sought from that commission, which has the duty under the law of limiting the term of imprisonment where the circumstances warrant it. State ex rel. Atkinson v. Tahash, 274 Minn. 65, 142 N. W. (2d) 294.

The record in the instant case shows no prejudicial error committed by either the court which sentenced defendant or the

court which heard defendant's petition at the postconviction hearing. The judgment is affirmed.

Affirmed.