David Joseph FRITZ, Petitioner, Respondent,

v.

STATE of Minnesota, Appellant,

and

David J. FRITZ, Petitioner, Appellant,

v.

STATE of Minnesota and the Commissioner of Public Welfare, State of Minnesota, Respondents.

Nos. 48403, 49521.

Supreme Court of Minnesota.

Aug. 24, 1979.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Paul G. Zerby, Asst. Atty.

Gen., St. Paul, Robert W. Johnson, County Atty., Dan M. Kammeyer and Edwin M. Wistrand, Asst. County Attys., Anoka, for State in both cases.

Evalynn Welling, Asst. Public Defender, Minneapolis, for Fritz in No. 49521.

C. Paul Jones, Public Defender, and J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for Fritz in both cases.

Ellen C. Dubuque, Sp. Asst. Atty. Gen., St. Paul, for State et al., in No. 49521.

Heard, considered, and decided by the court en banc.

TODD, Justice.

Appellant was convicted of criminal sexual misconduct based on a guilty plea. Imposition of sentence was stayed for 10 years on the condition that appellant be treated by the Department of Public Welfare (DPW) under the Minnesota Sex Offender Act. After treatment and various postconviction proceedings, the trial court continued appellant's commitment with the DPW and vacated appellant's 10-year probationary sentence to the commissioner of corrections. Pursuant to a postconviction hearing, the trial court also concluded that (1) appellant was entitled to a hearing when any attempt is made to transfer him from a DPW institution to prison, and (2) the appellant should not be transferred from the DPW program to prison because to do so would be contrary to appellant's needs and contravene the purposes of the Sex Offender Act. The state challenges the trial court's order vacating appellant's 10-year probationary sentence, and appellant makes various constitutional challenges to the Sex Offender Act. We affirm in part, reverse in part, and remand.

In 1976, appellant, then 27 years old, had offered to pay an 11-year-old boy to pose for photographs in the nude. Appellant also kissed the boy and placed his mouth on the boy's penis for a short time. Based on this conduct, appellant entered a plea of guilty to criminal sexual conduct in the first degree under Minn.St. 609.342(a). The trial court ordered a presentence social, physical, and mental examination pursuant to the Sex Offender Act, Minn.St. 246.43, subd. 1, which compels the examination upon conviction of such a crime. The DPW, based on a psychologist's report, recommended special treatment for appellant's mental and physical aberrations.

The trial court followed the recommendation. Imposition of sentence was stayed and appellant was placed on probation to the commissioner of corrections for a period of 10 years, subject to the condition that appellant be committed to the commissioner of public welfare pursuant to the Sex Offender Act, Minn.St. 246.43. Appellant was sent to the Minnesota Security Hospital at St. Peter. Appellant was first treated in the Intensive Treatment Program for Sexual Aggressives and subsequently on other wards within the state hospital.

Because it was felt that the treatment was unsuccessful, the probation officer recommended that the stay of sentence be revoked and that appellant be committed to the commissioner of corrections at the Minnesota State Prison. Instead of sending appellant to prison, the trial court vacated the sentence to the commissioner of corrections and continued appellant's commitment with the DPW. The state appealed from that order.

During the pendency of the state's appeal from the order, the commissioner of public welfare transferred appellant to the State Prison at Stillwater. Appellant challenged the transfer and also raised new issues pursuant to the state's appeal. This court stayed the state's appeal and remanded the case for a postconviction hearing. In the meantime, appellant was returned to the state hospital.

After the postconviction hearing, the trial court ordered that appellant cannot be transferred to the State Prison because it would be contrary to his needs and the purposes of the Sex Offender Act. Thus, appellant is still committed at the state hospital. Secondly, the trial court ordered that any attempt to transfer appellant to the prison must be preceded by a hearing.

Appellant filed a notice of appeal from the postconviction order on the basis that the order did not give him appropriate relief. This appeal also involves the state's appeal from the trial court's order in which the 10-year probationary sentence to the commissioner of corrections was vacated.

The issues presented on this appeal are:

(1) Was appellant denied due process or equal protection when he was initially committed to the DPW for specialized treatment?

(2) Is Minn.St. 246.43, subd. 8, unconstitutional insofar as it authorizes the transfer of sex offenders from a DPW institution to prison?

(3) Do the discharge provisions of the Sex Offender Act violate equal protection or due process?

(4) Did the trial court err in vacating the 10-year probationary sentence to the commissioner of corrections?

1. *Precommitment Procedure.* Appellant argues that he was denied due process and equal protection when he was initially committed for specialized treatment to the DPW without precommitment procedures similar to civil commitments. The state, on the other hand, argues that the commitment to the DPW is a sentencing alternative which does not require the same procedures as civil commitments.

The Sex Offender Act, repealed as of May 30, 1979,[1] has several provisions concerning procedures for commitment to the DPW. Upon conviction of certain sex crimes, such as the one in this case, the offender must be sent by the court to the commissioner of public welfare or private facility for a presentence social, physical, and mental examination evaluation. Minn.St. 246.43, subd. 1. Upon conviction of other sex crimes, the court may, in its discretion, commit the offender for a presentence evaluation if the commissioner has adequate facilities and is willing to accept the commitment. Minn.St. 246.43, subd. 2.

The reports of the examination are submitted to the court. Minn.St. 246.43, subd. 4.

If specialized treatment is not recommended by the commissioner, the court shall impose a criminal sentence. Minn.St. 246.43, subd. 5. On the other hand, if the commissioner recommends specialized treatment for the offender's mental and physical aberrations, the judge may, in his discretion, either (1) place the offender on probation with the condition of out-patient treatment, or (2) commit the offender to the commissioner of public welfare. Minn.St. 246.43, subd. 6. There is some question whether the judge may also impose a criminal sentence in addition to commitment.

No formal hearing on the determination of commitment or out-patient treatment is provided by the statute, but the offender is given notice of commitment to the DPW. Minn.St. 246.43, subd. 8(a).

Appellant bases his constitutional argument on cases which indicate that a person convicted of a crime cannot be committed for mental illness without affording the person the same precommitment procedural safeguards which are given to persons civilly committed. In *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), a prisoner, near the expiration of his prison term, was transferred to an institution for the mentally ill without a jury review which is available to persons civilly committed. The Supreme Court held this procedure violated equal protection. The court said (383 U.S. 114, 86 S.Ct. 764, 15 L.Ed.2d 625):

"The director argues that it is reasonable to classify persons in Baxstrom's class together with those found to be dangerously insane since such persons are not only insane but have proven criminal tendencies as shown by their past criminal records. * * *

"We find this contention untenable. Where the State has provided for a judicial proceeding to determine the danger-

1. The Sex Offender Act will no longer apply to offenses committed on or after May 30, 1979. L.1979, c. 258, §§ 25, 26. Therefore, transfers such as are involved in this case will no longer be permissible.

ous propensities of all others civilly committed to an institution of the Department of Correction, it may not deny this right to a person in Baxstrom's position solely on the ground that he was nearing the expiration of a prison term. It may or may. not be that Baxstrom is presently mentally ill and such a danger to others that the strict security of a Department of Correction hospital is warranted. All others receive a judicial hearing on this issue. Equal protection demands that Baxstrom receive the same."

In *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the petitioner was convicted of indecent liberties but not sentenced under the criminal statute; instead, he was sentenced without a hearing under a Colorado sex offender act for an indefinite term of 1 day to life because the trial court concluded that the sex offender "constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." The Supreme Court concluded that due process was violated because the Sex Offender Act imposed punishment on the basis of a new finding of fact which was not an element of the crime for which the offender was convicted. The court concluded that due process requires counsel, an opportunity to be heard, subpoena power, and the right of cross-examination.

More recently in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), a mentally defective deaf-mute had been found incompetent to proceed in a criminal trial, and after a hearing he was committed under an Indiana statute which provided for less precommitment safeguards than the civil commitment statute. The offender argued that the commitment would amount to a life sentence, and that he was deprived of equal protection because absent the criminal charges pending against him, the state would have had to proceed under the statutes generally applicable to commitment of feeble-minded persons and mentally ill persons. The Supreme Court held that equal protection had been denied. After reviewing cases in which the court had held that criminal conviction was no

basis for differentiating in procedures for indefinite mental commitment, the court said (406 U.S. 724, 92 S.Ct. 1851, 32 L.Ed.2d 443):

"If criminal conviction and imposition of sentence are insufficient to justify less procedural and substantive protection against indefinite commitment than that generally available to all others, the mere filing of criminal charges surely cannot suffice."

Other courts have also indicated that when a sex offender is to be indefinitely committed in a mental institution for treatment rather than incarceration under a sentence, due process requires a hearing and the right of confrontation, and equal protection requires the same precommitment procedural safeguards as are afforded to nonoffenders. See, *Huebner v. State*, 33 Wis.2d 505, 147 N.W.2d 646 (1967); *In re Andrews*, 368 Mass. 468, 334 N.E.2d 15 (1975); *State ex rel. Farrell v. Stovall*, 59 Wis.2d 148, 207 N.W.2d 809 (1973). See, generally, Annotation, 24 A.L.R.2d 350.

We think these cases may be distinguished, however. An important distinction can be made between indefinite commitment of a convicted offender and commitment for a period not to exceed a penal sentence for the criminal conviction. In *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), the Supreme Court addressed the question of whether procedures for commitment after a sentence had expired were constitutional. The court distinguished commitment during the period of the sentence, stating (405 U.S. 510, 92 S.Ct. 1052, 31 L.Ed.2d 403):

"Respondent seeks to justify the discrimination [in procedures] on the ground that commitment under the Sex Crimes Act is triggered by a criminal conviction; that such commitment is merely an alternative to penal sentencing; and consequently that it does not require the same procedural safeguards afforded in a civil commitment proceeding. *That argument arguably has force with respect to an initial commitment under the Sex Crimes*

*Act, which is imposed in lieu of sentence, and is limited in duration to the maximum permissible sentence.* The argument can carry little weight, however, with respect to the subsequent renewal proceedings, which result in five-year commitment orders based on new findings of fact, and are in no way limited by the nature of the defendant's crime or the maximum sentence authorized for that crime." (Italics supplied.)

This language indicates that different considerations apply when the commitment is limited by the length of the penal sentence. Under such circumstances, the commitment is similar to other sentencing alternatives.

Thus, most courts considering the question indicate that due process and equal protection require application of the civil commitment procedures only if the convicted sex offender is committed indefinitely like civilly committed persons, and that the civil commitment procedures need not be applied if the commitment is an alternative to sentencing with the length of commitment limited by a criminal sentence. For example, when considering the constitutionality of a sexual psychopath law, a Federal court stated in *Davy v. Sullivan,* 354 F.Supp. 1320, 1326 (M.D.Ala.1973):

"For purposes of determining the constitutionality of the statute, it is helpful for this Court to first attempt to characterize the proceedings and incarceration provided for by the statute. This is so because the constitutional standards to be applied to the statute will vary depending on whether the statute provides for a criminal proceeding in the nature of sentencing alternative or, rather, for a separate, civil commitment proceeding.

" * * * If incarceration pursuant to a post-conviction proceeding is in lieu of a criminal sentence and is limited in duration to the maximum permissible sentence for that conviction, then such incarceration is in the nature of a sentencing alternative and the proceeding pursuant to which such incarceration is imposed is a mere sentencing proceeding not requiring even those procedural safeguards that are afforded in a civil commitment."

Other decisions have demonstrated similar reasoning. See, *Burbey v. Burke,* 295 F.Supp. 1045, 1049 (E.D.Wis.1969); *People v. Gonzales,* 91 Cal.App.3d 853, 866, 154 Cal.Rptr. 442, 450 (1979); *State ex rel. Farrell v. Stovall, supra.* Cf. *United States v. Ecker,* 177 U.S.App.D.C. 31, 51, 543 F.2d 178, 198 (1976), certiorari denied, 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977). But, see, *Matthews v. Hardy,* 137 U.S.App. D.C. 39, 420 F.2d 607 (1969), certiorari denied, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970).

■ Thus, if commitment of a sex offender is viewed as a separate confinement different from imposition of sentence, the offender should be afforded the full panoply of hearing rights. On the other hand, if the commitment of the sex offender is viewed as a sentencing alternative, the offender is not constitutionally entitled to the full panoply of hearing procedures. Accordingly, we conclude equal protection and due process do not require that a convicted sex offender receive the full panoply of commitment procedures afforded to civilly committed persons if the commitment is a sentencing alternative and commitment on that basis is limited to the length of a criminal sentence for the conviction. We are persuaded that the conviction of a crime affords a sufficient rationale for commitment during the duration of the sentence, which distinguishes such convicted persons from persons civilly committed.

■ This raises the question, therefore, of whether commitment under the Minnesota Sex Offender Act is a sentencing alternative and limited to the duration of a criminal sentence for the conviction. We conclude that it is. Minn.St. 246.43, subd. 12, provides for automatic discharge of the committed sex offender upon "the expiration of any sentence imposed, subject to the provisions of section 243.18 [relating to good time], or at the expiration of one year, whichever is the greater." This provision for automatic discharge assures committed sex offenders that the commitment will not be indefinite, but rather will be in lieu of

incarceration. Thus, the initial commitment[2] can be for a period not to exceed the length of the criminal sentence, evincing a legislative intent to make the commitment a sentencing alternative.[3]

Appellant points out, however, that no sentence presently exists because the trial court vacated the 10-year sentence to the commissioner of corrections. Although, as we consider elsewhere in this opinion, there is some question whether the language "sentence imposed" in Minn.St. 246.43, subd. 12, refers to a sentence actually imposed by the trial court,[4] we conclude that it certainly encompasses the maximum sentence authorized by law when no sentence is actually imposed by the court. Thus, appellant qualifies for automatic discharge no later than the expiration of the maximum sentence for his criminal conviction.

In conclusion, we find no violation of due process or equal protection in the procedures used to commit appellant to the DPW.

2. *Constitutionality of the Transfer Provisions.* Minn.St. 246.43, subd. 8, contains several provisions concerning the power of the commissioner of public welfare to control the treatment of committed sex offenders and to transfer them to suitable institutions. The subdivision reads in part:

"(b) The commissioner shall then arrange for his treatment in the institution best suited in his judgment to care for him. He may transfer him to or from any institution to provide for him according to his needs and to protect the public. The commissioner may irrespective of his consent require participation by him in vocational, physical, educational and correctional training and activities; may require such modes of life and conduct as seem best adapted to fit him for return to full liberty without danger to the public; and may make use of other methods of treatment and any treatment conducive to the correction of the person and to the prevention of future violations of law by him.

"(c) The commissioner may make use of law enforcement, detention, parole, medical psychiatry, education, correctional, segregative and other facilities, institutions and agencies, public or private, within the state. * * * "

This statute empowers the commissioner to transfer committed sex offenders to such institutions as prison if appropriate for the needs of the offender and for protection of the public. Appellant argues that such a transfer is unconstitutional. Specifically, it is argued that such a transfer is a denial of equal protection, a denial of due process, and cruel and unusual punishment.

2. Provisions in the Sex Offender Act do allow "holdover" commitment after the sentence has expired if the commissioner applies for and is granted a court order wherein it is determined that the offender is dangerous to the public because of a mental problem. Minn.St. 246.43, subds. 13, 14. The procedures necessary to recommit the offender for periods beyond the term of the sentence are not raised on this appeal, and we express no opinion on them.

3. Support for our conclusion that the Sex Offender Act represents a sentencing alternative rather than a separate and distinct civil-type commitment is found in the existence of a Minnesota statute governing the commitment of psychopathic personalities. Minn.St. 526.10 provides that persons with psychopathic personalities may be civilly committed in accordance with the civil commitment procedures set forth in Minn.St. c. 253A. "Psychopathic personality" is defined in Minn.St. 526.09 as: " * * * the existence in any person of such conditions of emotional instability, or impul-

siveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons."

The fact that the legislature has enacted provisions for civil commitment of sexually deviant and dangerous persons demonstrates that the Sex Offender Act was intended to be a sentencing alternative rather than another, overlapping procedure for civil commitment of such persons.

4. This involves the question of whether "dual sentencing" is authorized by the Sex Offender Act; that is, whether the trial court may commit the offender to the DPW and also stay sentence to prison during treatment with the DPW. We consider this issue in part (4) of this opinion.

We find that these issues are not presented on the facts of this appeal. We will not decide an issue with possible ramifications on the constitutionality of a statute prior to a time when necessary. See, *State v. North Star Research & Develop. Inst.*, 294 Minn. 56, 200 N.W.2d 410 (1972). At this time, appellant is not subject to a transfer to prison. The trial court after postconviction proceedings determined as a matter of law:

> "The Commissioner of Public Welfare, by transferring petitioner to Minnesota State Prison when such transfer would not be according to petitioner's needs, has acted contrary to Minn.Stat. § 246.43.

> \*    \*    \*    \*    \*    \*

> "IT IS THEREFORE ORDERED, that the Commissioner of Public Welfare is prohibited from transferring petitioner to Minnesota State Prison."

Appellant remains at the DPW hospital, and the trial court's order precludes transfer of appellant to a state prison without first seeking an appropriate order from the trial court.

Although we will not decide on this appeal the constitutionality of a transfer from the DPW institution to prison, we observe that a transfer to prison would undoubtedly present constitutional problems if not preceded by a hearing and if not based on a penal sentence.[5]

3. *Constitutionality of the Discharge Provisions.* Appellant seeks to raise in this appeal the argument that the discharge provisions of the Sex Offender Act are unconstitutional. He argues that the procedures for release must conform with procedures used in releasing civilly committed persons, and that he is entitled to a full panoply of due process rights.

Appellant makes no claim that he has sought and been denied any specific procedure for discharge. Thus, the issue concerning the constitutionality of discharge procedures is not properly before us. We observe, however, that because the sex offender is entitled to release upon completed and successful treatment,[6] the sex offender is undoubtedly entitled to a meaningful opportunity to be heard during the periodic examinations and parole proceed-

---

5. Our constitutional analysis of the commitment to the DPW is premised on the view that commitment is a sentencing alternative which cannot exceed the length of the criminal sentence, rather than being an indefinite civil commitment. As a sentencing alternative, commitment is not unlike a type of probation with the prison sentence stayed during successful participation in the treatment program. Viewed as such, it would appear that treatment should not be revoked and the offender should not be transferred to prison unless a hearing is conducted concerning his treatment needs and concerning protection of the public in accordance with the principles set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). See, *Romero v. Schauer*, 386 F.Supp. 851 (D.Colo.1974); *Burchett v. Bower*, 355 F.Supp. 1278 (D.Ariz.1973); *Davy v. Sullivan*, 354 F.Supp. 1320, 1329 (M.D.Ala.1973). But, see, *Cruz v. Ward*, 558 F.2d 658 (2 Cir. 1977), certiorari denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978).

The trial court in the postconviction proceeding was cognizant of this right to a hearing. The trial court concluded as a matter of law: "Under U.S.Const. Amend. XIV, § 1, petitioner is entitled to notice and an opportunity to be heard before any transfer from an institution under the control of the Commissioner of Public Welfare to an institution under the control of the Commissioner of Corrections."

Constitutional infirmities might also arise when the transfer to prison is based on mental commitment rather than a penal sentence. When release from confinement is based on cure of mental aberrations rather than expiration of a penal sentence, it is generally recognized that treatment for the aberrations is constitutionally required. Cf. *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Humphrey v. Cady*, 405 U.S. 504, 514, 92 S.Ct. 1048, 1054, 31 L.Ed.2d 394, 405 (1972). See, also, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Therefore, if no treatment is afforded in prison, incarceration until cure of the mental aberration rather than expiration of a sentence could be unconstitutional.

6. Minn.St. 246.43, subd. 10, provides for parole if the offender is capable of making an acceptable adjustment in society, and Minn.St. 246.43, subd. 11, provides for discharge if there is reasonable probability that the offender can be given full liberty without damage to the public.

ings to assure release when the conditions of entitlement have been satisfied. Cf. *State ex rel. Taylor v. Schoen*, 273 N.W.2d 612 (Minn.1978) (due process rights of persons seeking parole). See, also, *Terry v. Schubert*, 74 Wis.2d 487, 247 N.W.2d 109 (1976), vacated and remanded sub nom., *Percy v. Terry*, 434 U.S. 808, 98 S.Ct. 40, 54 L.Ed.2d 66 (1977), reinstated, 84 Wis.2d 693, 267 N.W.2d 380 (1978).

4. *The Decision to Vacate the 10-Year Criminal Sentence.* The trial court, after various postconviction proceedings, vacated appellant's 10-year criminal probationary sentence to the commissioner of public welfare. The state's appeal challenging that order was stayed until now. The state argues that the court may impose a "dual sentence"; that is, the court may (1) order commitment to the DPW based on the offender's mental and physical aberrations; and (2) sentence the offender (with incarceration stayed during treatment) based on the criminal activity. Thus, the state argues that the trial court erred in vacating the 10-year criminal sentence.

The trial court vacated the sentence because it construed the Sex Offender Act as prohibiting a dual sentence. In its memorandum, the trial court stated:

" * * * [T]he legislature intended that one or the other alternative be chosen, but not both. The court may not order both probation and commitment, as was done in this case.

"Because appellant's sentence amounts to a dual commitment in violation of the controlling statute, this sentence is invalid and must be vacated by this court."

We think this interpretation is erroneous and conclude as a matter of statutory construction that it would have been permissible, and probably desirable, had the trial court imposed a "dual sentence." Minn.St. 246.43, subd. 6, provides:

"If it appears from said report that the commissioner [of public welfare] recommends specialized treatment for his mental and physical aberrations, the court *may* either place him on probation with the requirement as a condition of such probation, that he receive outpatient treatment in such manner as the court shall prescribe, or commit him to the commissioner under this section." (Italics supplied.)

The use of the permissive "may" rather than the mandatory "shall" demonstrates that the trial court, in its discretion, may decide to neither commit the sex offender to the DPW nor impose out-patient treatment. In such a situation, the trial court obviously remains empowered to impose a prison sentence in lieu of commitment or out-patient treatment. Thus, the power of the trial court to impose a criminal sentence is not negated by § 246.43, subd. 6.

Moreover, § 246.43, subd. 12, provides:

"Every person committed to the commissioner who has not been discharged from his control as provided in subdivision 11 * * * shall be discharged *at the expiration of any sentence imposed*, subject to the provisions of section 243.18 [relating to 'good time'], or at the expiration of one year, whichever is the greater. For the purposes of this subdivision, sentence shall begin at noon of the day of commitment by the court to the commissioner." (Italics supplied.)

This language recognizes the possibility that a judge may impose a criminal sentence as well as commit the person to the DPW, provided that the sentence runs concurrently with commitment (even though incarceration is stayed during commitment).

The appellant argues that a dual sentence may not be imposed, relying on *State ex rel. Copas v. Burke*, 28 Wis.2d 188, 136 N.W.2d 778 (1965). In that case, the Wisconsin Supreme Court held that under the Wisconsin sex offender statute a person recommended for specialized treatment cannot be sentenced to incarceration, but must be either committed to the department for treatment or placed on probation with treatment. This case may be distinguished, however. The Wisconsin statute stated that upon recommendation of specialized treatment, the court "shall" order commitment or probation. Wis.St. 959.15(6) (amended and recodified at Wis.St. 975.-

06[2]). The Minnesota statute, as mentioned previously, has the notable difference of stating that the court "may" order commitment or probation with treatment. Moreover, unlike the Minnesota act which refers to automatic discharge at the expiration of "any sentence imposed," the Wisconsin act referred to automatic discharge at the expiration of "the maximum term prescribed by law." Wis.St. 959.15(12) (amended and recodified at Wis.St. 975.12[1]). Thus, the language of the Wisconsin act, unlike the Minnesota act, demonstrates a legislative intent to disallow dual sentencing.

Contrary to the trial court's conclusion in its memorandum, we conclude that a dual sentence is permissible under the Minnesota Sex Offender Act. However, nothing in the act requires the imposition of a concurrent prison sentence when the offender is confined in a DPW institution. Thus, dual sentencing is permissible but not mandatory, and consequently the trial court's decision to vacate the 10-year probationary sentence was permissible. Normally, we will not reevaluate a sentence if the trial court's discretion has been properly exercised and the sentence is authorized by law. See, *State v. Dinneen*, 289 Minn. 250, 184 N.W.2d 16 (1971); *State v. Gamelgard*, 287 Minn. 74, 177 N.W.2d 404 (1970). See, also, Rule 27.03, subd. 9, Rules of Criminal Procedure.

However, because the trial court apparently vacated the sentence under a mistaken interpretation of the law, we remand the case and allow the trial court to reconsider its decision to vacate the sentence. We also observe that the offender may petition for reinstatement of the 10-year probationary sentence rather than face possible commitment for a maximum term of 20 years for the offense.

Affirmed in part; reversed in part; and remanded.