STATE of Minnesota, Respondent,

v.

Robert Allen SHATTUCK, Appellant.

No. C6–03–362.

Supreme Court of Minnesota.

Aug. 18, 2005.

Rehearing granted Oct. 6, 2005.

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAGE, Justice.

In an order issued last December, we determined that under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the district court's imposition of an upward durational departure from the presumptive sentence prescribed by the Minnesota Sentencing Guidelines violated appellant Robert Shattuck's Sixth Amendment right to trial by jury. *State v. Shattuck,* 689 N.W.2d 785, 786 (Minn. 2004). We indicated a full opinion would follow, and we directed the parties to file supplemental briefs on the issue of remedy.

The issues presented by this appeal arise out of the sexual assault of 17–year–old R.E. At about 10:30 p.m. on January 30, 2001, R.E. was walking home after getting off a bus in south Minneapolis when a man pushing a bicycle approached her from behind and asked the time. As R.E. reached for her watch, the man displayed a knife, threatened her, and forced her to walk down an alley. When they stopped, the man took $25 from R.E.'s pocket and told her to pull down her pants. From behind, he penetrated her vaginally with his fingers and penis, causing her pain. When R.E. asked him to stop, the man threatened her again. After the man finished, he cleaned his hands in the snow and then punched R.E. in the face, breaking her jaw. The man told R.E. that if she told anyone about the assault he would kill her, and rode away on his bicycle.

The police investigation quickly focused on Shattuck, who worked at a nearby restaurant and had gotten off work shortly before the assault. After Shattuck's picture was shown on a televised report about the assault, he went to Georgia, where he was arrested on an unrelated charge. At trial, the state introduced substantial circumstantial evidence as well as DNA evidence linking Shattuck to the assault. At the jury instruction conference, Shattuck argued that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), any aggravating factor that could expose him to an enhanced sentence under Minnesota's repeat sex offend-

er statute had to be decided by the jury, not the district court. The court denied Shattuck's request to so instruct the jury. The jury found Shattuck guilty of two counts of kidnapping, two counts of first-degree criminal sexual conduct, and one count of first-degree aggravated robbery.

At the time of the offense, first-degree criminal sexual conduct and kidnapping with great bodily harm were both severity level eight offenses under the Minnesota Sentencing Guidelines. Minn. Sent. Guidelines IV, V (2000). Shattuck's criminal history score was nine, which included a custody status point, making his presumptive sentence 161 (156–166) months for these offenses.[1] Minn. Sent. Guidelines II.B.2, IV (2000). The repeat sex offender statute provides that for certain forms of first- and second-degree criminal sexual conduct, the district court "shall commit" the defendant for not less than 30 years if it finds that (1) an aggravating factor exists which provides grounds for an upward departure under the Sentencing Guidelines, and (2) the defendant has a previous conviction for criminal sexual conduct in the first, second or third degrees. Minn.Stat. § 609.109, subd. 4(a) (2004).[2]

The district court sentenced Shattuck to the presumptive 161–month prison term for kidnapping, and to an enhanced 360–month (30–year) term for first-degree criminal sexual conduct pursuant to section 609.109, subdivision 4, and ordered the sentences to be served concurrently. The

---

1. Under the guidelines currently in force, the offenses are severity level nine and the presumptive sentence is the same.

2. The statute provides, in relevant part:

 The court shall commit a person to the commissioner of corrections for not less than 30 years * * * if:
 * * * *
 (2) the court determines on the record at the time of sentencing that:

 (i) the crime involved an aggravating factor that would provide grounds for an upward departure under the Sentencing Guidelines other than the aggravating factor applicable to repeat criminal sexual conduct convictions; and
 (ii) the person has a previous sex offense conviction under sections 609.342, 609.343, or 609.344.
 Minn.Stat. § 609.109, subd. 4(a) (2004).

court found four aggravating factors to justify the enhanced sentence: (1) the victim was particularly vulnerable; (2) the victim was treated with particular cruelty; (3) the victim suffered great emotional harm; and (4) the assault was planned.

The court of appeals affirmed Shattuck's conviction and sentence. *State v. Shattuck*, No. C6–03–362, 2004 WL 772220 (Minn.App. Apr.13, 2004). The court held that the district court "acted within its discretion in finding that aggravating factors provided a sufficient basis for sentencing Shattuck under the mandatory-minimum-sentencing statute, and that decision did not violate the holding of *Apprendi*." *Id.* at *6. While Shattuck's petition for review was pending in this court, the United States Supreme Court issued its decision in *Blakely*. In accordance with the rule announced in that case, we reverse the court of appeals and remand to the district court.

### I.

The first issue before us is whether the imposition of an enhanced sentence under Minn.Stat. § 609.109, subd. 4, which mandates a 30–year minimum sentence when the district court determines at sentencing that "the crime involved an aggravating factor that would provide grounds for an upward departure under the Sentencing Guidelines," violated Shattuck's Sixth Amendment right to trial by jury. In our earlier order in this case, we answered this question in the affirmative, and stated that "because imposition of the presumptive sentence is mandatory absent judicial findings under the legislatively-created Guidelines regime, the presumptive sentence is the maximum penalty authorized solely by the jury's verdict for purposes of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)." *State v. Shattuck*, 689 N.W.2d at 786.

Issues of constitutional interpretation are issues of law that we review de novo. *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 283 (Minn.2004). Minnesota statutes are presumed constitutional, and the party challenging a statute on constitutional grounds must demonstrate, beyond a reasonable doubt, that the statute violates a provision of the constitution. *State v. Grossman*, 636 N.W.2d 545, 548 (Minn.2001).

We begin the analysis in this case by noting that the rule that has evolved in the *Apprendi* line of cases is based on the constitutional right to jury trial and the requirement of proof beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. at 477, 120 S.Ct. 2348; *Blakely v. Washington*, 124 S.Ct. at 2536; *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 748, 160 L.Ed.2d 621 (2005). The Supreme Court explained in *Booker* that as sentencing enhancements have increased in recent years the jury's findings as to the underlying crime have become less significant. *Id.* at 751. "The new sentencing practice forced the Court to address the question how the right of jury trial could be preserved, in a meaningful way guaranteeing that the jury would still stand between the individual and the power of the government under the new sentencing regime. * * * [The] answer [is] not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." *Id.* at 752. The constitutional rule that has evolved is:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Id.* at 756.

In *Apprendi*, the defendant pleaded guilty to possession of a firearm for an

unlawful purpose, stemming from his firing several gunshots into the home of an African–American family that had recently moved into an all-white neighborhood. 530 U.S. at 469, 120 S.Ct. 2348. Under New Jersey law, the offense carried a penalty range of 5 to 10 years. *Id.* at 470, 120 S.Ct. 2348. A separate hate-crime statute provided for an enhanced sentencing range of 10 to 20 years if the trial judge found, by a preponderance of the evidence, that the defendant committed the crime with a purpose to intimidate an individual or group of individuals because of, inter alia, race. *Id.* at 468–69, 120 S.Ct. 2348. Following an evidentiary hearing, the trial judge found that Apprendi's actions were made with a purpose to intimidate, and imposed an enhanced 12–year term. *Id.* at 471, 120 S.Ct. 2348.

The Supreme Court reversed, holding that the New Jersey statutory scheme allowing the judge to impose an enhanced sentence, based on a judicial finding using a preponderance standard, violated constitutional due process and jury-trial guarantees. *Id.* at 476–77, 491–92, 120 S.Ct. 2348; *see State v. Grossman,* 636 N.W.2d at 548. The Court announced the following rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. In reaching this conclusion, the Court described the distinction between elements of the crime and sentencing factors as "constitutionally novel and elusive," and made clear that "the relevant inquiry is not one of form but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's verdict?" *Id.* at 494, 120 S.Ct. 2348 (footnote omitted); *Grossman,* 636 N.W.2d at 550–51 (footnote omitted).

Following *Apprendi,* this court applied its rule in a number of cases. In *Grossman,* we held that the patterned sex offender statute, which allowed the judge to increase by 10 years the maximum prison sentence prescribed by the first-degree criminal sexual conduct statute, based on the judge's factual findings using a preponderance-of-evidence standard, violated due process. 636 N.W.2d at 551. *See also O'Meara v. State,* 679 N.W.2d 334, 340–41 (Minn.2004) (holding sentences imposed pursuant to patterned sex offender statute that enhanced by 15 years maximum sentence prescribed by second-degree criminal sexual conduct statute to be unconstitutional). We have also held that imposition of a mandatory conditional release term for sex offenders is permissible under *Apprendi,* but that an enhanced conditional release term under the patterned sex offender statute, on top of an already-enhanced prison sentence under the same statute, violated due process because it exceeded the maximum sentence prescribed for the offense of conviction and was imposed based on judicial findings using a preponderance standard. *State v. Jones,* 659 N.W.2d 748, 752–53 (Minn.2003). In *State v. Smith,* 669 N.W.2d 19, 33 (Minn.2003), we addressed the constitutionality of enhancing the minimum prison term for first-degree murder, from life in prison with the possibility of release after 30 years to life imprisonment without the possibility of release when the defendant has a prior conviction for a "heinous" crime. We concluded that *Apprendi* principles were not implicated because only the minimum term of imprisonment is affected by the finding of a heinous crime, and therefore the determination of a prior heinous crime conviction may be found by the district court. *Id.* (relying on *Harris v. United States,* 536 U.S. 545, 567, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (holding that *Apprendi* did not

preclude judge from making factual determination affecting minimum sentence)).[3]

The Supreme Court subsequently extended *Apprendi* to sentencing guidelines regimes. In *Blakely*, the defendant pleaded guilty to kidnapping his estranged wife, an offense which, under the applicable criminal statutes, carried a maximum penalty of 10 years' imprisonment. 124 S.Ct. at 2535. Washington's sentencing guidelines called for a "standard range" sentence of 49 to 53 months for the offense. *Id.* The guidelines also permitted a judge to impose an "exceptional sentence" above the standard range if the judge found "substantial and compelling" reasons to do so. *Id.* Following a hearing, the judge imposed a 90–month exceptional sentence, finding that Blakely had acted with "deliberate cruelty." *Id.* The Court reversed, holding:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* * * * In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Id.* at 2537. Thus, the enhanced sentence imposed in *Blakely* was unconstitutional even though it did not exceed the 10–year maximum prescribed by the criminal statutes.

In *Booker*, the Supreme Court held that the Sixth Amendment as construed in *Blakely* applies to the Federal Sentencing Guidelines. 125 S.Ct. at 746. In both of the consolidated cases before the Court, a jury found the defendant guilty of a drug distribution offense, and the district court made factual findings at sentencing, by a preponderance of the evidence, that subjected the defendant to a sentence many years beyond the guidelines sentence authorized by the jury verdict alone. *Id.* at 746–47. The Supreme Court concluded that "there is no distinction of constitutional significance" between the Federal Sentencing Guidelines and the Washington procedures at issue in *Blakely* because under both systems, the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges. *Id.* at 749–50. The Court added that if the guidelines were merely advisory, "their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Id.* at 750 (citations omitted). *See also Blakely*, 124 S.Ct. at 2540 (stating that indeterminate sentencing does not infringe on province of jury). By a different majority, the Court went on to excise mandatory provisions of the federal Sentencing Act and make the federal guidelines advisory. *Id.* at 764–65.

We now turn to the constitutionality of Shattuck's sentence enhancement imposed pursuant to the repeat sex offender statute. As stated earlier, this statute mandates that the district court impose a 30–year minimum sentence for certain repeat sex offenders if it finds, at the time of sentencing, that an aggravating factor exists which provides grounds for an upward departure under the Sentencing Guidelines. Minn.Stat. § 609.109, subd. 4(a). We note at the outset that the 30–year minimum sentence prescribed by this statute is also the maximum sentence for the offense of first-degree criminal sexual con-

**3.** We recently overruled *Smith* in light of *Blakely*. *State v. Leake*, 699 N.W.2d 312, 323 (Minn.2005).

duct, the crime of conviction for which Shattuck's sentencing enhancement was imposed. Minn.Stat. § 609.342, subd. 2(a) (2004). We also note that because section 609.109, subdivision 4, expressly incorporates the procedures of the Sentencing Guidelines for upward durational departures, the constitutional validity of the statute necessarily implicates the constitutional validity of upward durational departures under the Sentencing Guidelines.[4]

The state argues that the Sentencing Guidelines as written are advisory to the district court and therefore do not implicate Sixth Amendment concerns. In support, the state points to statutory language which specifies that the guidelines are advisory and that sentencing pursuant to the guidelines is not a right that accrues to the defendant. *See* Minn.Stat. § 244.09, subd. 5 (2004). Citing remarks made by the first director of the Sentencing Guidelines Commission in 1979, the state contends that the guidelines have been advisory since their inception. *See* Remarks of Dale G. Parent prepared for delivery at National Conference of State Legislators, *Development of Statewide Sentencing Guidelines in Minnesota* (Minn. Sent. Guidelines Comm'n July 1979). The state further argues that the Minnesota Sentencing Guidelines are less mandatory than the "reformed" Federal Sentencing Guidelines following the *Booker* decision, and that boundaries on the sentencing discretion of Minnesota judges are practically nonexistent. We disagree with the state's position.

If the Minnesota Sentencing Guidelines were merely advisory—if they constituted no more than a rough map to steer the district court in exercising sentencing discretion—they would suffer from no constitutional infirmity. *Booker,* 125 S.Ct. at 750. Were this the case, the relevant statutory maximum for *Blakely* purposes in this case would be the maximum sentence set out in the criminal sexual conduct statute, not the presumptive sentence prescribed by the guidelines. This, however, is not the case before us.

The Minnesota Sentencing Guidelines were promulgated by the Sentencing Guidelines Commission ("Commission"), which was created by the legislature in 1978. Act of April 5, 1978, ch. 723, art. I, § 9, subd. 5, 1978 Minn. Laws 761, 766 (codified as Minn.Stat. § 244.09, subd. 5 (2004)). The legislature provided that the guidelines "shall be advisory to the district court and shall establish" both (1) the circumstances under which imprisonment of an offender is proper, and (2) "[a] presumptive, fixed sentence for offenders for whom imprisonment is proper, based on each appropriate combination of reasonable offense and offender characteristics." *Id.* The act required the Sentencing Guidelines to be submitted to the legislature and provided that they "shall be effective May 1, 1980, unless the legislature provides otherwise." *Id.,* § 9, subd. 12, 1978 Minn. Laws at 767 (codified as Minn.Stat. § 244.09, subd. 12 (2004)).

The legislature also set out certain procedures to be followed for deviations from the Sentencing Guidelines. *Id.,* § 10, 1978 Minn. Laws at 767–68 (codified as Minn. Stat. § 244.10 (2004)). It specifically provided that when the district court imposes or stays a sentence that deviates from the guidelines, the court "*shall* make written

---

**4.** The forms of first- and second-degree criminal sexual conduct to which the repeat sex offender statute applies are all severity level eight and nine offenses under the Sentencing Guidelines and carry presumptively executed sentences. *See* Minn.Stat. § 609.109, subd. 4(a)(1); Minn. Sent. Guidelines IV, V. Thus, the constitutionality of upward dispositional departures under the Sentencing Guidelines is not at issue in this case.

findings of fact as to the reasons for departure * * *." *Id.*, § 10, subd. 2, 1978 Minn. Laws at 768 (emphasis added). The legislature further provided for broad appellate review of sentences "to determine whether the sentence is inconsistent with statutory requirements, unreasonable, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." *Id.*, § 11, 1978 Minn. Laws at 768 (codified as Minn.Stat. § 244.11 (2004)).

In 1997, the legislature amended Minn. Stat. § 244.09, subd. 5, by adding language that, "[a]lthough the sentencing guidelines are advisory to the district court, the court *shall* follow the procedures of the guidelines when it pronounces sentence * * *." Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695 (emphasis added). The 1997 amendment also provided that sentencing pursuant to the guidelines "is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." *Id.*[5]

The Sentencing Guidelines promulgated by the Commission employ a grid to determine the presumptive sentence for felonies. Minn. Sent. Guidelines II.C., IV (Sentencing Guidelines Grid). The vertical axis of the grid represents the severity of the offense and is arrayed into 11 severity levels. Minn. Sent. Guidelines II.A, IV. The horizontal axis represents the defendant's criminal history score, comprised of prior convictions, applicable juvenile record, and custody status at the time of the current offense. Minn. Sent. Guidelines II.B, IV, V (Offense Severity Reference Table). A bold line on the grid demarcates those offenses for which the presumptive sentence is executed from those for which the presumptive sentence is stayed. Minn. Sent. Guidelines II.C, IV. The grid provides for a presumptive fixed sentence and, for those sentences which are presumptively executed, a presumptive sentencing range.[6] Minn. Sent. Guidelines II.C, IV. Any prison sentence outside the presumptive range constitutes a departure and requires the judge to provide written reasons. Minn. Sent. Guidelines II.C.

Minnesota Sentencing Guidelines II.D states that the sentencing judge "*shall* utilize the presumptive sentence" unless the individual case involves "substantial and compelling circumstances" (emphasis added). When such circumstances are present, the judge "may depart from the presumptive sentence and stay or impose any sentence authorized by law." *Id.* When

---

5. This provision was enacted following our holding in *State v. Givens*, 544 N.W.2d 774, 777 (Minn.1996), that "defendants may relinquish their right to be sentenced under the guidelines," so long as the waiver was knowing, intelligent, and voluntary. We subsequently concluded that the fairest reading of this provision of the 1997 amendment is that the legislature removed whatever "right" a defendant might have to sentencing under the guidelines. *State v. Misquadace*, 644 N.W.2d 65, 70–71 (Minn.2002). We have also noted that although the legislature in the 1997 amendment stated for the first time that the guidelines are based on *state public policy* to maintain sentencing uniformity, proportionality, rationality and predictability, these principles have been part of the Sentencing Guidelines' "Statement of Purpose and Principles" since their inception. *Hutchinson v. State*, 679 N.W.2d 160, 164 (Minn.2004) (citing Minn. Sent. Guidelines I). We have further emphasized that these overriding principles apply in "*all* sentencing." *Id.* (emphasis in original) (quoting *Misquadace*, 644 N.W.2d at 71).

6. By statute, the presumptive range may consist of an increase or decrease of up to 15% in the presumptive, fixed sentence. Minn.Stat. § 244.09, subd. 5. In 2005, the legislature amended this provision to provide for an increase of 20% from the fixed sentence and a decrease of 15%. Act of June 2, 2005, ch. 136, art. 16, § 1, 2005 Minn. Laws ——, ——.

departing, the judge should "pronounce a sentence which is proportional to the severity of the offense of conviction and the extent of the offender's prior criminal history, and should take into substantial consideration the statement of purpose and principles" of the guidelines. *Id.* A judge who departs from the presumptive sentence must provide written reasons which both specify the substantial and compelling nature of the circumstances and demonstrate why the sentence is more appropriate, reasonable or equitable than the presumptive sentence. *Id.* The guidelines then list factors that should not be used for departure and nonexclusive aggravating and mitigating factors that may be used as reasons for departure. Minn. Sent. Guidelines II.D.1 and 2.

In this court's first decision construing the Sentencing Guidelines, we stated: "Underlying the Guidelines is the notion that the purposes of the law will not be served if judges fail to follow the Guidelines in the 'general' case." *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). That same year we indicated that it would be a "rare case" that would warrant reversal of the refusal to depart from a presumptive sentence. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

▮▮ We review the district court's decision to depart from the guidelines' presumptive sentence for an abuse of discretion. *Garcia,* 302 N.W.2d at 647. But we have emphasized that the district court has discretion to depart *"only if* aggravating or mitigating circumstances are present;" if such circumstances are not present, "the trial court has no discretion to depart." *State v. Best,* 449 N.W.2d 426, 427 (Minn. 1989). We also require the district court to include a statement of the reasons for departure on the record at the time of sentencing in order for a departure to be allowed. *State v. Geller,* 665 N.W.2d 514, 517 (Minn.2003).

▮▮ Additionally, we have placed limitations on the length of durational sentencing departures. As a general rule, the maximum upward durational departure that can be justified by aggravating circumstances is double the presumptive sentence. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). Only in cases of "severe aggravating circumstances" may the district court impose a greater-than-double departure from the presumptive sentence; in such cases the only absolute limit on duration is the maximum provided in the statute defining the offense. *State v. Mortland,* 399 N.W.2d 92, 94 & n. 1 (Minn. 1987). Such cases, we have stated, are "extremely rare." *State v. Spain,* 590 N.W.2d 85, 89 (Minn.1999).

▮▮ A basic tenet of Sentencing Guidelines jurisprudence is that the district court may not base an upward durational departure on factors that the legislature has already taken into account in determining the degree or seriousness of the offense. *See, e.g., Taylor v. State,* 670 N.W.2d 584, 589 (Minn.2003); *State v. McIntosh,* 641 N.W.2d 3, 11 (Minn.2002). Additionally, while it is generally proper for the court to consider the conduct underlying the offense of which the defendant is convicted, reliance on other offenses that are not part of that offense and of which the defendant was not convicted is not a permissible basis for a durational departure. *Taylor,* 670 N.W.2d at 588.

▮▮ This survey of pertinent law makes clear that the district court has limited sentencing discretion under the Minnesota Sentencing Guidelines. In particular, we conclude that in imposing sentence for a felony, the district court is required to impose the presumptive sentence set out in the Sentencing Guidelines

Grid absent additional findings. Section II.D of the guidelines expressly provides that the court "shall utilize the presumptive sentence" unless substantial and compelling circumstances are present. While the statute authorizing promulgation of the Sentencing Guidelines states that they are advisory to the district court, it expressly provides that the district court "shall follow the procedures of the guidelines" in pronouncing sentence. Minn.Stat. § 244.09, subd. 5. Under the canons of statutory construction, "shall" is mandatory. Minn.Stat. § 645.44, subd. 16 (2004); *State v. Humes*, 581 N.W.2d 317, 319 (Minn.1998). Utilization of the presumptive sentence under Minn. Sent. Guidelines II.D is one of the "procedures of the guidelines" the statute requires the district court to follow. Similarly, in our jurisprudence during the quarter century the Sentencing Guidelines have been in effect, we have sought to effectuate the guidelines' purposes by requiring the district court to utilize the presumptive sentence in the usual case.[7] We hold, therefore, that like the sentencing guidelines systems at issue in *Blakely* and *Booker*, under the Minnesota Sentencing Guidelines imposition of the presumptive sentence is mandatory absent additional findings.[8]

■ It follows from this holding that for purposes of the constitutional rule that has evolved in the *Apprendi* line of cases, for felonies other than first-degree murder[9] the presumptive sentence prescribed by the Minnesota Sentencing Guidelines is "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 124 S.Ct. at 2537 (emphasis omitted). An upward durational departure from the presumptive sentence, based on findings made by the district court, violates the Sixth Amendment right to trial by jury. *Apprendi v. New Jersey*, 530 U.S. at 490, 120 S.Ct. 2348; *Blakely v. Washington*, 124 S.Ct. at 2537. It is irrelevant whether the judicially determined facts *require* a sentencing departure, as under the repeat sex offender statute, or merely *allow* a departure, as under the guidelines. *Blakely*, 124 S.Ct. at 2538 n. 8. In either case, the court finds facts beyond the elements of the offense, and the verdict or guilty plea

---

7. The district court's sentencing discretion under the Sentencing Guidelines is further constrained by the statutory requirement that the court make written findings of fact as to the reasons for departure from the presumptive sentence and the statute instituting appellate review of sentences. Minn.Stat. §§ 244.10, subd. 2; 244.11 (2004).

8. In *State v. Misquadace*, we noted that under the federal and Washington guidelines systems, like Minnesota's, the "primary relevant sentencing criteria [are] the offense of conviction and the offender's criminal history." 644 N.W.2d 65, 68 (Minn.2002) (citations omitted). The Washington sentencing scheme at issue in *Blakely* is similar to Minnesota's in several material respects. It required the district court to impose a sentence within a range set out in a sentencing grid unless the court found "substantial and compelling" reasons to depart. Wash. Rev.Code

§§ 9.94A.120(1), (2); 9.94A.310 (2000). Written findings for a departure were required, and the guidelines provided a nonexhaustive list of factors for departure. Wash. Rev.Code §§ 9.94A.120(3); 9.94A.390 (2000). Further, Washington case law like ours prohibits using factors for a sentencing departure that have already been taken into account in computing the presumptive ("standard range") sentence. *State v. Gore*, 143 Wash.2d 288, 21 P.3d 262, 277 (2001) (quoted and cited in *Blakely v. Washington*, 124 S.Ct. at 2537, for the proposition that had the judge imposed the enhanced sentence solely on the basis of Blakely's guilty plea, he would have been reversed).

9. First-degree murder is excluded from the Sentencing Guidelines because it carries a mandatory sentence of life imprisonment. Minn. Sent. Guidelines II.A.; Minn.Stat. § 609.185(a) (2004).

alone does not authorize the enhanced sentence. *Id.* We note that *Blakely* expressly permits a defendant to either stipulate to relevant facts or consent to judicial fact-finding regarding sentencing factors. *Id.* at 2541.

## II.

The state also makes the argument that *Blakely* does not apply to sentencing under the Sentencing Guidelines because Minnesota's guidelines are not statutory. The state contends that the legislature has created only one set of statutory maximums. Unlike the statutory presumptive sentences enacted by the Washington Legislature that were at issue in *Blakely,* the state argues, the Minnesota Sentencing Guidelines simply reflect the combined wisdom of the various stakeholders in the criminal justice system who serve on the Commission, none of whom is appointed by the legislature. *See* Minn.Stat. § 244.09, subd. 2 (2004) (prescribing makeup of Commission).

The state made this argument before the Supreme Court's decision in *Booker.* There the Court held that the fact the Federal Sentencing Guidelines were promulgated by the Sentencing Commission rather than by Congress "lacks constitutional significance." *United States v. Booker,* 125 S.Ct. at 752. The Court reasoned that regardless of whether Congress or a commission determined that a particular fact must be proved in order to impose an enhanced sentence, the principles behind the jury-trial right are equally applicable. *Id.* at 752–53.

The same rationale applies to the Minnesota Sentencing Guidelines; the fact they were promulgated by the Commission rather than by the legislature is not rele-

vant to the constitutional analysis. We note that the legislature created the Commission and outlined in broad strokes what the guidelines would ultimately look like. Minn.Stat. § 244.09, subds. 1, 5 (2004). Further, the legislature retained the power to reject the original guidelines promulgated by the Commission and to reject any modifications the Commission makes to the guidelines. Minn.Stat. § 244.09, subds. 11, 12 (2004). We conclude, therefore, that the state's statutory argument lacks merit.

## III.

■■■■ In the present case, under *Apprendi* · and *Blakely,* the maximum sentence the district court could have imposed for Shattuck's first-degree criminal sexual conduct conviction, based on the jury verdict alone, is the presumptive sentence of 161 (156–166) months' imprisonment. Minn. Sent. Guidelines II.B.2, IV. When the court determined that aggravating factors existed that would provide grounds for an upward departure under the Sentencing Guidelines and imposed the mandatory minimum 30–year sentence pursuant to Minn.Stat. § 609.109, subd. 4, it violated Shattuck's Sixth Amendment right to have a jury make that determination using a reasonable-doubt standard. We therefore hold that the upward departure from the presumptive sentence is unconstitutional. Because section 609.109, subdivision 4, and Minn. Sent. Guidelines II.D authorize the district court to make such an unconstitutional upward durational departure upon finding an aggravating factor without the aid of a jury, we hold that the statute is facially unconstitutional and section II.D of the guidelines is unconstitutional as applied.[10] The statute is uncon-

---

**10.** The traditional rule is that a law is facially unconstitutional only if it is unconstitutional

in all of its applications. See *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95

stitutional in its entirety because without the unconstitutional provision it is incomplete and incapable of being executed in accordance with legislative intent. *See* Minn.Stat. § 645.20 (2004). This is so because in it, the legislature expressly conditioned the imposition of a 30–year sentence on a judicial finding that *Blakely* does not permit a sentencing judge to make: that "the crime involved an aggravating factor that would provide grounds for an upward departure under the Sentencing Guidelines * * *." Minn.Stat. § 609.109, subd. 4(2)(i) (2004). Minnesota Sentencing Guidelines II.D is unconstitutional insofar as it permits an upward durational departure based on judicial findings.[11]

## IV.

Having determined that Shattuck's enhanced sentence is unconstitutional, we turn to the question of the appropriate remedy. The answer to this question depends, at least in part, on whether the unconstitutional provision of Minn. Sent. Guidelines II.D can be severed from the remainder of the guidelines.

### A. *Severability*

 When a court determines that a law is unconstitutional, it must invalidate only as much of the law as is necessary to eliminate the unconstitutionality. *Chap-*

*man v. Comm'r of Revenue,* 651 N.W.2d 825, 836 (Minn.2002) (citing *Archer Daniels Midland Co. v. State,* 315 N.W.2d 597, 600 (Minn.1982)). "We look first at the intent of the legislature to fashion a remedy consistent with that intent." *Id.* Our primary goal in determining a remedy is, insofar as possible, to effectuate the intent of the legislature had it known that a provision of the law was invalid. *Johnson Bros. Wholesale Liquor Co. v. Comm'r of Revenue,* 402 N.W.2d 791, 793 (Minn.1987).

 Minnesota Statutes § 645.20 states that absent a provision in the law to the contrary, the provisions of all laws are severable. If any provision of a law is found to be unconstitutional, "the remaining provisions of the law shall remain valid" unless the court makes either of two findings: (1) the valid provisions "are so essentially and inseparably connected with, and so dependent upon, the void provisions" that the court cannot presume the remaining valid provisions would have been enacted without the void one; or (2) the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with legislative intent. *Id.* We have emphasized that while we can strike a severable provision of a law if found to be unconstitutional, "we cannot add language to a statute in order to render it constitutionally permissible."

L.Ed.2d 697 (1987) (to succeed in facial challenge, challenger "must establish that no set of circumstances exists under which the Act would be valid"). Appellant has not demonstrated that Minn. Sent. Guidelines II.D is unconstitutional in all of its applications, because a section not before us today, which provides for imposition of an upward departure based on the fact of a prior conviction, could be determined to be constitutional. See Minn. Sent. Guidelines II.D.2.b(3) (listing as aggravating factor fact that defendant's current and past felony convictions are for criminal sexual conduct or offense in which victim was otherwise injured). The presence

of this aggravating factor is insufficient to trigger sentencing under the repeat sex offender statute. Minn. Stat. § 609.109, subd. 4(a)(2)(i) (2004).

**11.** We note that the legislature has recently amended section 609.109, subdivision 4, and has adopted a revision of Minn. Sent. Guidelines II.D that was recommended by the Commission. Act of June 2, 2005, ch. 136, art. 16, §§ 9, 14, 2005 Minn. Laws ——, ——; *see* Minn. Sent. Guidelines Comm'n, *Report to the Legislature* 11–12 (Jan.2005). The validity of those provisions is not before us here.

*Chapman,* 651 N.W.2d at 836 (quoting *McGuire v. C & L Restaurant, Inc.,* 346 N.W.2d 605, 614 (Minn.1984)).

Minnesota Statutes § 244.09, subdivision 5, states that the Sentencing Guidelines are "a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." The Sentencing Guidelines themselves state that the purpose of the guidelines "is to establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines I. We have said that the guidelines were created to assure uniformity, proportionality, rationality, and predictability in sentencing. *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002) (citing Minn.Stat. § 244.09, subd. 5(2)). *See also State v. Zeimet,* 696 N.W.2d 791, 796 (Minn.2005) (stating that sentencing guidelines were created to assure equity in sentencing).[12]

In light of the overriding purposes of the Sentencing Guidelines system, we conclude that the unconstitutional portion of Minn. Sent. Guidelines II.D may be severed from the remaining provisions of the guidelines. Section II.D is unconstitutional only insofar as it allows the district court to impose an upward durational departure based on the court's own findings. We do not believe that the remaining provisions of the Sentencing Guidelines are "so essentially and inseparably connected with, and so dependent upon" the unconsti-

tutional provision allowing a judge to make findings which would justify an upward durational departure that the remaining provisions would not have been enacted without it. Minn.Stat. § 645.20.

We base this conclusion on a number of considerations. First, the *Blakely* decision narrowly focuses on the procedure of judge-determined upward departures from the presumptive sentence, not the substance or other procedural aspects of determinate sentencing. The Court expressly did not find determinate sentencing schemes unconstitutional, and stated that *Blakely* was concerned only with "how [determinate sentencing] can be implemented in a way that respects the Sixth Amendment." 124 S.Ct. at 2540.

Second, to rule that section II.D cannot be severed from the remainder of the Sentencing Guidelines is to effectuate a return to an indeterminate sentencing system, in significantly different form than that which existed before the legislature supplanted it with a determinate Sentencing Guidelines system in 1978.

Until the advent of the Sentencing Guidelines, except for certain mandatory sentences such as for first-degree murder, "the length of a sentence was left almost entirely to the sentencing judge's discretion, within the maximum terms established by the legislature" and constitutional limitations. 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law & Procedure* § 36.1 (3d ed.2001). As long as the sentence was authorized by law, it was not subject to appellate review; relief could only be had through the parole board. *State v. Gamelgard,* 287 Minn. 74,

---

12. Drawing on the statute, section I of the guidelines and other sources, we have characterized Minnesota's Sentencing Guidelines system as a commission-based system the goals of which are "to assure public safety, promote uniformity and proportionality in

sentencing, provide greater honesty or 'truth in sentencing,' and coordinate sentencing practices within correctional resources." *Zeimet,* 696 N.W.2d at 796 (quoting *Taylor v. State,* 670 N.W.2d at 586).

77–78, 177 N.W.2d 404, 407 (1970); *State v. Dinneen*, 289 Minn. 250, 259, 184 N.W.2d 16, 22 (1971). For felonies other than first-degree murder, a judge who chose to impose a prison sentence could either sentence the defendant to a maximum term of years selected by the court or to an indeterminate term that was deemed to be for the statutory maximum for the offense. Minn.Stat. § 609.10(2), (3) (1976). The parole board had broad authority to parole or discharge a defendant sentenced to prison, without regard to the length of the sentence. Minn.Stat. § 609.12, subd. 1 (1976).

Under the current statutory framework, the parole board that previously determined an inmate's actual release date no longer exists, and the Commissioner of Corrections' parole authority applies only to individuals sentenced before the Sentencing Guidelines took effect in 1980. Minn.Stat. §§ 243.05, subd. 1; 244.08, subd. 1 (2004). To strike down the Sentencing Guidelines regime in its entirety, as the dissent proposes, would give judges the discretion to impose a fixed prison sentence at any point within the statutory range for the particular offense.[13] Minn. Stat. § 609.10, subd. 1(2) (2004). Thus, under the dissent's proposed remedy, the judge at sentencing would both select a sentence within a broad range, and effectively determine the defendant's actual release date.[14] The representatives of the people have never voted for the indetermi-

nate sentencing system the dissent proposes. To the extent it might be said that the legislature would not have enacted a determinate guidelines system without provision for upward durational departures, there is nothing to suggest that the legislature would have enacted the dissent's proposed system.

To invalidate the Sentencing Guidelines system would also be contrary to the express sentencing policy of this state of maintaining uniformity, proportionality, and predictability in sentencing. Minn. Stat. § 244.09, subd. 5. A major purpose of the guidelines' enabling statute was to reduce judges' sentencing discretion, thus promoting greater uniformity of sentences. Richard S. Frase, *The Role of the Legislature, The Sentencing Commission, and Other Officials Under the Minnesota Sentencing Guidelines*, 28 Wake Forest L.Rev. 345, 347 (1993). There can be no doubt that complete invalidation of the Sentencing Guidelines would disserve the goal of uniformity in felony sentencing and would make sentencing in Minnesota more unpredictable.

The state argues that without sufficient provision for upward departures to maintain proportionality in sentencing, the Sentencing Guidelines would never have become law. The argument is based on the veto of an earlier version of determinate

---

**13.** In the case of first-degree criminal sexual conduct, for example, it is conceivable that one judge could impose a minimal year-and-a-day prison sentence for an individual who sexually penetrates an infant, and another judge could sentence an 18–year–old to a 30–year prison term for having sexual intercourse with a nearly 16–year–old non-relative who resides in the same home and who in fact consented but by law is deemed incapable of consent. *See* Minn.Stat. §§ 609.342, subds. 1(a) and (g), 2(a); 609.341, subd. 15(3) (2004).

**14.** The only reduction of a prison sentence currently provided by statute is good time earned by the defendant. *See* Minn.Stat. §§ 244.04; 244.05, subd. 1 (2004). Good-time reduction of a prison sentence was available in addition to the opportunity for parole before the Sentencing Guidelines were adopted. *See* Minn.Stat. § 243.18 (1976) (repealed 1978). It is not clear whether the dissent's proposed remedy would include elimination of appellate review of sentences, another significant limitation on the discretion of the district court.

sentencing by then-Governor Wendell Anderson in 1976. The state asserts that the Governor vetoed the bill because he disagreed with the omission of extended term provisions for serious offenders, citing *Research Project: Minnesota Sentencing Guidelines*, 5 Hamline L.Rev. 292, 304 (1982). But this was not the reason for the veto. Governor Anderson vetoed the bill because its provision for extended terms for chronic dangerous offenders inadvertently failed to define "extended term." Veto Message, 4 Journal of House of Representatives 6640–41 (69th Minn.Legis. Apr. 13, 1976). One governor's veto of different legislation, followed by enactment of a commission-based Sentencing Guidelines system by a different legislature and signed by a different governor, is not helpful in determining legislative intent.

Proportionality in sentencing is not dependent upon the availability of upward durational departures from the presumptive sentence. Sentencing proportionality requires that more severe sanctions be imposed for more serious offenses and offenders. Kay A. Knapp, *Impact of the Minnesota Sentencing Guidelines on Sentencing Practices*, 5 Hamline L.Rev. 237, 247 (1982). The Sentencing Guidelines Grid "provides the primary mechanism for achieving proportionality in sentencing." *Id.* While the mechanism for departing from the presumptive sentence further affects proportionality, *id.*, retaining the Sentencing Guidelines while striking down that unconstitutional mechanism with respect to upward durational departures better serves the goal of proportionality than invalidating the Sentencing Guidelines in their entirety. In this regard, we note that the sentences provided in the grid

"are presumed to be appropriate for every case," and that departures are intended to apply to only a small number of cases.[15] Minn. Sent. Guidelines II.D, II.D.01 cmt.; *State v. Misquadace*, 644 N.W.2d at 68.

We conclude that severing the unconstitutional portion of Minn. Sent. Guidelines II.D from the remainder of the guidelines best effectuates legislative intent. Severance of section II.D does the least damage, in terms of both keeping a sentencing structure in place close to what the legislature enacted, and the judiciary refraining from taking an active role in creating a sentencing scheme for the state. With the exception of that portion of section II.D, therefore, we leave the Sentencing Guidelines intact.

### B. *The Booker Remedy*

The state urges us to follow the lead of the Supreme Court in *Booker* and modify the Minnesota Sentencing Guidelines to make them advisory. In *Booker*, the Court answered the question of remedy by finding the provision of the federal Sentencing Act that made the Federal Sentencing Guidelines mandatory to be "incompatible" with its constitutional holding that the federal guidelines are subject to Sixth Amendment jury-trial requirements, and severed that and another statutory provision relating to standards of review. 125 S.Ct. at 756–57, 764. The Court then required federal courts to consider guidelines ranges in imposing sentence, *id.* at 757, 767, and adopted a standard of unreasonableness for reviewing sentences, *id.* at 765. The Court based its holding on the determination that Congress would have preferred total invalidation of the Sentenc-

---

**15.** In 2003, the last year for which statistics have been reported, the number of aggravated sentencing departures, both durational and dispositional, constituted 7.3% of felony sen-

tences. Minn. Sent. Guidelines Comm'n, *The Impact of Blakely v. Washington on Sentencing in Minnesota: Long Term Recommendations* 8 (Sept. 30, 2004).

ing Act to engrafting a jury-trial requirement onto it, and would have preferred the Court's remedy to total invalidation. *Id.* at 758–59.

The state asserts that the *Booker* holding is applicable to the Minnesota Sentencing Guidelines and legislative intent. The state proposes that two provisions of the Sentencing Guidelines be severed: the requirement of section II.D that the sentencing judge "shall utilize the presumptive sentence," and section I.4 in its entirety ("While the sentencing guidelines are advisory to the sentencing judge, departures from the presumptive sentences established in the guidelines should be made only when substantial and compelling circumstances exist.").

We decline to modify the guidelines as the state requests. Because *Booker* was decided on purely federal law grounds, it does not mandate a similar result here. The Federal Sentencing Guidelines system is a complex one that differs significantly from Minnesota's. More important, the Court's approach to severability in *Booker* is far different than the traditional, deferential approach taken under Minnesota law. *See Booker*, 125 S.Ct. at 777 (Stevens, J., dissenting) (describing majority's severability approach as "entirely new law").

To accept the state's invitation would effectively return felony sentencing in Minnesota to an indeterminate sentencing system. It would also require us to invalidate two provisions of the Sentencing Guidelines that suffer from no constitutional infirmity. It is not our role to choose among various provisions of the Sentencing Guidelines and select a sentencing system for this state.[16]

## C. *Other Remedies*

In the earlier order in this case, we directed the parties to address the question whether this court has the inherent authority to authorize the use of sentencing juries and a bifurcated trial process. *State v. Shattuck*, 689 N.W.2d at 786. The parties agree that the court has the power to authorize both procedures.

"The inherent power of this court includes 'the right to enable [the court] to administer justice whether any previous form of remedy has been granted or not.' " *State v. Erickson*, 589 N.W.2d 481, 485 (Minn.1999) (brackets in original) (quoting *In re Clerk of Lyon County Court's Compensation*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976), in turn quoting *In re Greathouse*, 189 Minn. 51, 55, 248 N.W. 735, 737 (1933)). The authority to regulate matters of court procedure arises from the court's inherent judicial powers. *State v. Johnson*, 514 N.W.2d 551, 553 (Minn.1994) (citing *State v. Willis*, 332 N.W.2d 180, 184 (Minn.1983)). Because the court's inherent authority extends only to its unique judicial functions, we "proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their consti-

---

**16.** We note that the revision of Minn. Sent. Guidelines II.D that the legislature adopted in 2005, *see* footnote 10, *supra*, includes language that a sentence outside the applicable range on the grid "is not controlled by the guidelines, but rather, is an exercise of judicial direction," and that aggravating departure factors "are advisory only." Minn. Sent. Guidelines Comm'n, *Report to the Legislature* 11–12 (Jan.2005). We further note that this provision "is effective the day following final enactment" and thus has only prospective application. Act of June 2, 2005, ch. 136, art. 16, § 14, —— Minn. Laws. ——, ——. By contrast, other provisions of the act affecting sentencing departures are "effective the day following final enactment *and appl[y] to* sentencing hearings, *sentencing rehearings,* and sentencing departures sought on or after that date." *Id.*, §§ 3–6 (emphasis added).

tutionally authorized functions." *State v. C.A.*, 304 N.W.2d 353, 358–59 (Minn.1981) (citations omitted). In the area of sentencing, both the legislature and the judiciary exercise constitutionally authorized functions. The power to fix the limits of punishment for criminal acts lies with the legislature, but the imposition of a sentence in a particular case within those limits is a judicial function. *State v. Misquadace*, 644 N.W.2d at 68; *State v. Olson*, 325 N.W.2d 13, 17–18 (Minn.1982).

▆ While this court has the authority to establish procedures to apply the requirements of *Apprendi* and *Blakely* to sentencing in Minnesota, we leave to the legislature the task of deciding how the Sentencing Guidelines system should be altered to comport with those cases. It is the legislature that created the Sentencing Guidelines system and retains authority over its development. For us to engraft sentencing-jury or bifurcated-trial requirements onto the Sentencing Guidelines and sentencing statutes would require rewriting them, something our severance jurisprudence does not permit. *See Chapman v. Comm'r of Revenue*, 651 N.W.2d at 836.

We reverse the decision of the court of appeals and remand this case to the district court for resentencing consistent with this opinion.[17]

Reversed and remanded for resentencing.

ANDERSON, G. BARRY, J. (concurring in part and dissenting in part).

I join the opinion of the court in its application of *Blakely v. Washington* to the Minnesota Sentencing Guidelines. When the district court may unilaterally find facts that increase the defendant's sentence beyond what would otherwise be legally permissible based on the jury verdict or guilty plea alone, the jury does not "stand between the individual and the power of the government." *United States v. Booker*, —— U.S. ——, ——, 125 S.Ct. 738, 752, 160 L.Ed.2d 621 (2005). But because I conclude the majority's remedy for the *Blakely* violation does not comply with our severability jurisprudence, I respectfully dissent.

Any discussion of a remedy for *Blakely*-related problems must begin by addressing severability issues. Severability is an analytical tool designed to protect the separation of powers by preventing the court from substitution of its judgment for the judgment of the elected representatives of the people. *See Regan v. Time Inc.*, 468 U.S. 641, 652–53, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). Traditional severability analysis begins with an unconstitutional portion of an act and asks if it may properly be severed in light of the intent of the legislature as to the act as it was passed. The court may not craft its own remedy by adding to an act or excising portions of its choosing. *See id.; McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 614 (Minn.1984).

Minnesota Statutes § 645.20 (2004) lays out the statutory standard for severability:

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found unconstitutional and void, the re-

---

**17.** We note that the legislature has recently enacted significant new requirements for aggravated sentencing departures, including sentencing juries and bifurcated trials, and that these changes apply both prospectively and to resentencing hearings. Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 2005 Minn. Laws ——, ——. We express no opinion about these recent changes, and do not foreclose the district court from considering any constitutionally applicable and/or available laws on remand.

maining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with legislative intent.

There is a presumption of severability. *Chapman v. Commissioner of Revenue,* 651 N.W.2d 825, ·835 (Minn.2002). Analysis of whether a statute's void provisions are severable centers on legislative intent, *see, e.g., City of Duluth v. Sarette,* 283 N.W.2d 533 (Minn.1979) (holding that unconstitutional provision exempting certain groups from ambit of an obscenity ordinance may be properly severed because doing so did not alter the intended effect of the ordinance, and the constitutionally void portion was "superfluous"). But because our goal is to effectuate the intent of the legislature had it known that a part of the bill was unconstitutional, the attention given to legislative intent is in the form of a specific question. *See Johnson Bros. Wholesale Liquor Co. v. Comm'r of Revenue,* 402 N.W.2d 791, 793 (Minn.1987). We must center only on the specific unconstitutional provision, and then ask whether the legislature would have passed the constitutional provisions of the statute independently of the provision declared unconstitutional—here, whether the legislature

would have passed a system where presumptive sentences are applied regardless of any aggravating factors. *See Regan v. Time Inc.,* 468 U.S. at 653, 104 S.Ct. 3262; *Sarette,* 283 N.W.2d at 537. *See also State v. Dilts,* 337 Or. 645, 103 P.3d 95 (2004) (holding that the court considers "whether a part of a statute should be severed only when part of a statute is held to be unconstitutional and the court therefore must determine whether *that* part of the statute can be severed and the remaining parts of the statute saved" (emphasis in original)). If the answer is no, the provision is not severable and the entire regime must be declared unconstitutional.

In the present case, we should ask the traditional severability question this way: Would the legislature in 1978 have passed the remaining provisions that constitute the sentencing guidelines regime without the unconstitutional provision for departures from presumptive sentences? In asking this question, it is important to note that the legislature cannot intend something unconstitutional. Thus, the fact that the legislature did pass the guidelines system is irrelevant to the severability question, as is the majority's observation that failing to sever would return the state to indeterminate sentencing and allow broad judicial discretion in sentencing.[1] The court must not merely ask which possible remedy seems to conform best to the intent of the legislature. *See* Minn.Stat. § 645.20. Ad hoc analysis of what remedy the legislature would likely prefer enables the judiciary to take on the legislative

---

**1.** The Supreme Court in *Blakely* expressly approved of judicial discretion in sentencing and indeterminate sentencing. The issue is one of legal expectation. A defendant convicted or pleading guilty under a system of mandatory presumptive sentences has an expectation of a specific sentence. But under a system of indeterminate sentencing, potential criminals are on notice that their behavior

risks a broad range of possible punishment. Nothing about judicial discretion in sentencing offends the Sixth Amendment unless it pushes an offender's penalty above the presumptive punishment the law provides. *See Blakely,* 124 S.Ct. at 2540; *Harris v. United States,* 536 U.S. 545, 565, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

mantle too easily. Instead, upon a determination that the legislature would not have passed the remainder of the guidelines regime without a provision for upward departures, the court should strike down the entire regime and return the state to indeterminate sentencing. That system at least has the approval of an earlier body of the people's representatives, whereas the system the court today creates only has the approval of this court.

By examining the legislative history of the original sentencing guidelines legislation, we can answer the severability question definitively, and the answer is no. The guidelines would never have become law but for the provision for upward departures.

In 1975, State Senator William McCutcheon introduced a determinate sentencing bill that made imprisonment mandatory for all felonies, eliminated "good time" and abolished the parole board.[2] *Research Project: Minnesota Sentencing Guidelines*, 5 Hamline L.Rev. 292, 301 (1982) (hereinafter "Research Project"). The bill, perceived as a "get tough on criminals" bill because it would send all felons to prison, was less a serious proposal than a means to stimulate consideration of sentencing reform ideas. *Id.* at 302. After extensive hearings prior to the 1976 legislative session, the bill was completely rewritten. *Id.* Included in the new bill was a presumptive sentence of 40% of the statutory maximum in the 1963 criminal code and a provision allowing courts to deviate from the presumptive sentence within a range of 15%. *Id.* After passage in the Senate, the bill moved to the House Committee on Crime Prevention and Corrections. There, committee chairman Donald Moe opposed the bill because he believed that imposing identical sentences on all persons convicted of the same offense would ignore large differences in conduct leading to those convictions. *Id.* at 303 n. 11. Moe believed that supporters of the bill were not eliminating discretion in sentencing, but merely moving it from the parole board into the hands of judges and prosecutors, a group less transparent and accountable to the public than the parole board. *Id.*

But this determinate sentencing bill never became law. Governor Wendell Anderson vetoed the bill on April 13, 1976, expressing concerns along the lines of Rep. Moe. In particular, the Governor disagreed with the omission of a clear provision for longer sentences for the most serious offenders. *Id.* at 304 (citing Veto Message, 4 Journal of House 6640 (1976)). The majority notes that Governor Anderson vetoed the bill because its provision for extended terms for chronic and dangerous offenders did not define the penalty for such terms. But this observation only underscores the Governor's concern for proportionality in sentencing and public safety. Governor Anderson's objection to the bill was not as narrow as the majority contends. The Governor worried that dangerous offenders would not receive sufficiently *lengthy* sentences under the new law—that rationality and proportionality might be sacrificed in light of the bill's lack of guidance on the issue of extended terms. He wrote, "[m]y major concern is that [the bill] simply deals inadequately with chronic dangerous offenders." *Id.* at 6640. The Governor feared the bill would "result in non-use of extended terms; the basic determinate sentences in the bill

---

2. Prior to the sentencing reforms of the late seventies, the district court sentenced felons to a maximum term of years within the statutory range for the offense committed, and the parole board determined the actual release date. *See* Minn.Stat. §§ 609.10; 609.12 (1978).

would then result in sentences that are too short for chronic dangerous offender convicted of first and second degree murder and aggravated rape." *Id.* at 6641. Thus, we need not wonder whether determinate sentencing *would have* become law absent a clear procedure for upward departures; we know that such a proposal was *expressly rejected* based on concern for proportionality and public safety.

But the legislative history does not end with the Governor's veto. The bill was reintroduced in 1977, and was drastically altered in the House to include the concept of the sentencing guidelines. *Id.* at 305. The bill passed both legislative bodies, and in conference committee, the debate centered on the scope of discretion in sentencing as well as the location of that discretion. *Id.* at 305–06. Negotiators agreed upon a compromise that incorporated determinate sentencing with legislative and judicial guidelines. *Id.* at 306. While sentence ranges were narrow and sentences were determinate, judges were allowed to depart from the presumptive sentence. Governor Rudy Perpich signed the bill into law on April 5, 1978.

Thus, after determinate sentencing was rejected by Governor Anderson specifically because it would lead to disproportionate sentencing for the worst offenders, the legislature reached a very delicate compromise creating the determinate guidelines but allowing judges to increase sentences based on factual findings. The final debate in conference committee focused on discretion in sentencing and a provision for extended sentences for the worst offenders was a key part of the compromise that ultimately emerged. The historical record is overwhelming that legislators would not have moved forward with the bill but for the provision for upward departures from presumptive sentences based on judicial discretion. So, from the history of the bill alone, we can answer the severability question in the negative.

The text of the legislation itself lends further support to the proposition that the guidelines bill would not have been enacted without the unconstitutional provisions. The purpose of the legislation is explicitly detailed in the statutes promulgating the guidelines regime. Section 244.09, subdivision 5, although added to the guidelines statute in 1997, states that the guidelines are "a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695. The guidelines themselves state a purpose to "establish rational and consistent sentencing standards which reduce sentencing disparity and ensure * * * proportionality." Minn. Sent. Guidelines I. This court has stated its belief that the "overriding principle in all sentencing is rationality, predictability, and consistency * * *." *State v. Misquadace,* 644 N.W.2d 65, 71 (Minn.2002); *see also id.* at 68 ("[T]he sentencing guidelines were created to assure uniformity, proportionality, rationality, and predictability in sentencing"); *Hutchinson v. State,* 679 N.W.2d 160, 164 (Minn.2004). Further, public safety is a paramount concern of the Guidelines Commission when establishing and modifying the sentencing guidelines. Minn.Stat. § 244.09, subd. 5 (2004). The majority focuses on the goal of uniformity, and, citing our decision in *State v. Misquadace,* notes that the guidelines themselves, by providing a wide diversity of presumptive sentences based on both offense severity and criminal history, serve the goal of proportionality. *Misquadace,* 644 N.W.2d at 68. We explained in *Misquadace* that in order "[t]o maintain consistency, departures from the guidelines are discouraged." *Id.* at 68; Minn. Sent. Guidelines I. But we went on to note that "*any rational system of sentencing* must allow for

different sentences to be imposed when substantial and compelling circumstances warrant different treatment." *Id.* at 69 (emphasis added). Thus, while the majority is correct that the guidelines themselves lead to proportionate sentencing in the majority of cases, it is equally true that the guidelines cannot embrace every possible case, and thus proportionality and rationality *demand* that the worst offenders be dealt with outside the guidelines. Today's decision, stripping the Minnesota sentencing system of upward durational departures, requires imposition on remand of presumptive guidelines sentences for the very worst offenders, imposing an irrational sentencing system on the state.[3]

The majority attempts to play down the irrationality of the system it creates, arguing that the number of upward departures, 7.3% of felony sentences in 2003, is modest. Minn. Sent. Guidelines Comm'n, *The Impact of Blakely v. Washington on Sentencing in Minnesota: Long Term Recommendations* 8 (Sept. 30, 2004). The majority suggests by implication that taking the wheels off of upward departures is of little practical significance. The reverse is true; the modest number of upward departures reflects first, a well-designed system of presumptive sentences addressing the goal of uniformity, while preserving upward departures for the worst offenders. Upward departures in a large number of cases would make presumptive sentences meaningless.

But the actual number of upward departures is not constitutionally significant.

What is significant is the fact that no sentencing *system* can be rational and proportional without a mechanism for departures. *See Misquadace,* 644 N.W.2d at 69. Upward departures and guidelines sentencing are so inextricably bound together in the pursuit of uniform and proportional sentencing that, under our severability jurisprudence, the one cannot be separated from the other. Today's decision guts rational, proportionate sentencing and conflicts with the statutory command to consider public safety first. *See* Minn.Stat. § 244.09, subd. 5 (2004) (stating that the "primary consideration of the [sentencing guidelines] commission shall be public safety").

It is also worth mentioning that the legislature has taken action to address the *Blakely* problem. *See* Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 2005 Minn. Laws —, —. The legislature continues to be committed to proportionality and tough penalties for the worst offenders, and to this end has increased the ceiling on presumptive sentencing ranges from 15% to 20% above the fixed presumptive sentence. *Id.,* § 1. Further, the legislature remains committed to upward durational departures from the presumptive sentence, opting for jury determination of facts which support such departures. *Id.,* § 4. These provisions are a temporary fix, sunsetting on February 1, 2007. *Id.* But the legislature's decision to preserve upward departures underscores the conflict between our action today and the will of the people's representatives.[4]

---

**3.** It is, of course, true that an indeterminate sentencing regime, as urged by the dissent, may adversely complicate the legislative goal of uniformity. But while that development is speculative, proportionality is a guaranteed casualty of the majority decision.

**4.** Neither the majority's remedy nor the legislature's reforms resolve one potential problem

lurking beneath the surface of *Blakely:* The United States Supreme Court has flirted with holding outright that all facts that increase the ceiling in possible punishment beyond what is allowed by the jury verdict or defendant's admissions alone must be treated as elements of the offense. *See, e.g., Apprendi,* 530 U.S. 466, 478, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (majority opinion) ("Any

In light of the foregoing, we should have little problem answering the severability question in the negative—the legislature would never have passed the guidelines bill without provision for upward departures. Having found the guidelines non-severable, our precedents direct us to end our analysis of legislative intent. We should strike down the entire sentencing guidelines regime as unconstitutional and non-severable, and remand for resentencing under the statutory range for the offense committed.[5] This would allow district courts to exercise discretion to impose sentences up to the statutory maximum and provide the legislature a clean slate from which to begin sentencing reform anew.[6] For these reasons, I respectfully dissent.

possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by the court as it existed during the years surrounding our Nation's founding."); *id.* at 494 n. 19, 120 S.Ct. 2348 (majority opinion) ("[W]hen the term 'sentencing enhancement' is used to describe an increase beyond the authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."); *id.* at 521, 120 S.Ct. 2348 (Thomas, J., concurring) (exhaustively detailing the common law history of the understanding that "if a fact is by law the basis for imposing or increasing punishment * * * it is an element" of the crime being punished); *Ring v. Arizona,* 536 U.S. 584, 610, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (Scalia, J., concurring) ("[A]ll facts essential to the imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by a jury beyond a reasonable doubt."); *Harris v. United States,* 536 U.S. 545, 565, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) ("[T]hose facts that determine the maximum sentence the law allows, then, are necessarily elements of the crime.") (citations omitted). Elements of a crime must not only be submitted to the jury and proven beyond a reasonable doubt, but must also be included in the initial charging instrument. *See id.* at 557, 122 S.Ct. 2406 (holding that the legislature "may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt"). Striking the Minnesota guidelines regime in its entirety and remanding for imposition of a sentence under the statutory range would prospectively eliminate this issue because aggravating sentencing factors would be folded into the judge's discretion and would not affect the presumptive range of punishment. *See supra,* n. 1.

5. There are no perfect choices here. Under the dissent's proposed remedy, the district court sets fixed-length sentences within the statutory range for the offense committed, or if no range is fixed by statute, to a fixed term within the default range for a felony. Minn. Stat. §§ 609.03; 609.10 (2004). The majority correctly points out that the former parole board, which determined actual release dates for inmates, no longer exists, and that the legislature never intended judges to have unfettered discretion in sentencing. But neither did the legislature intend to *entirely* eliminate discretion in sentencing, as the majority does today. The 1978 legislature merely relocated discretion from the parole board to judges and prosecutors. Research Project, 5 Hamline L.Rev. at 303 n. 11. The compromise which emerged in 1978 embraced judicial discretion to serve the goal of proportionality by allowing judges to depart from the guidelines, although in a manner that offended the Sixth Amendment. *Id.* at 306. While we cannot resurrect the parole board, the dissent's position would retain that judicial discretion in a way that does not run afoul of the constitution and respects the intentions of the 1978 legislature. The majority's wholesale elimination of all discretion in sentencing is the more significant change, not envisioned by any body of the people's representatives.

6. In the present case, remanding for resentencing under the statutory range for the of-

fense committed would give the district court discretion to sentence Shattuck to a term of up to 360 months in prison—the very sentence he received by virtue of the district court's upward durational departure under Minn.Stat. § 609.109, subd. 4(a) (2004). Minn.Stat. § 609.342, subd. 2(a) (2004).